# Exhibit 1
# February 7, 2022 SAMs Notification

*Guzman v. True, et al.*,
No. 21-cv-02794-WJM-MEH (D. Colo.)



**U.S. Department of Justice**
Federal Bureau of Prisons

*Federal Correctional Complex Florence*
☒ *Administrative Maximum Security Institution*
☐ *High Security Institution*
☐ *Medium Security Institution*
☐ *Minimum Security Institution*

February 7, 2022

NOTICE TO: JOAQUIN ARCHIVALDO GUZMAN LOERA, REG. NO. 89914-053

FROM: C. Carter, Warden

SUBJECT: **Notification of Extension of Special Administrative Measures (SAM)**

### SUMMARY

The United States Attorney's Office for the Eastern District of New York (USA/EDNY) requests that your SAM be continued. The United States Attorney's Office for the Southern District of Florida, Drug Enforcement Administration (DEA), U.S. Department of Homeland Security, Homeland Security Investigations (HSI), Federal Bureau of Investigation (FBI), and Narcotic and Dangerous Drug section (NDDS) concur in this request. You were the long-time head of the Sinaloa Cartel in Mexico, which has been described as the largest and most powerful drug trafficking organization in the Western Hemisphere. Despite having been incarcerated three times in Mexico, first from 1993 to 2001, then from February 2014 until July 2015, and most recently from January 2016 through January 2017, you continued to manage the affairs of the Sinaloa Cartel and coordinated your escape from two different maximum security facilities in Mexico. Therefore, pursuant to 28 C.F.R. § 501.3, we will continue to implement SAM to restrict your access to the mail, the media, the telephone, and visitors. The SAM will commence immediately upon expiration of the prior SAM authorization period and will be in effect for a period of one year, subject to further direction.

### PROCEDURAL HISTORY

On May 11, 2016, a grand jury in the Eastern District of New York returned a fourth superseding indictment charging you with seventeen counts, including leading a Continuing Criminal Enterprise, which involves eighty-five criminal acts, including a murder conspiracy, several international cocaine trafficking charges and other narcotics trafficking charges, unlawful use of a firearm in relation to drug trafficking and a money laundering conspiracy. You, a Mexican national, were extradited to the United States on January 19, 2017, and were arraigned on the indictment on January 20, 2017. Your trial began on November 5, 2018; on February 12, 2019, a jury found you guilty of all counts in the indictment. On July 17, 2019, the court sentenced you to life plus thirty years' imprisonment to serve consecutive to your life sentence and imposed a criminal forfeiture

in the amount of $12.6 billion. On January 25, 2022, the United States Court of Appeals for the Second Circuit upheld the conviction and denied your request for a new trial. Because of your proclivity for violence, the Attorney General found that there was a substantial risk that your communications or contacts with persons could result in death or serious bodily injury to persons, or substantial damage to property that would entail the risk of serious bodily injury to persons, and placed you under SAM, originally effective February 3, 2017. On July 19, 2019, you arrived at the Administrative Maximum Penitentiary (ADX) in Florence, Colorado, where the SAM remain in effect.

## FACTUAL BACKGROUND

### A. Guzman's Criminal Conduct

The USA/EDNY reports that your involvement in drug trafficking, corruption, and violence is vast and extensive. By your own admission, you started at the age of fifteen cultivating marijuana and growing poppies for heroin production, which you sold for a living. Over the next forty years, you devoted your efforts to growing your drug trafficking organization and increasing and enhancing the power of the Sinaloa Cartel, often through torture and murder. As the leader of the Sinaloa Cartel, you operated with impunity at the highest level of the Mexican drug trafficking world, while being assured of your continued success and safety from arrest through your payment of bribes to government officials and law enforcement officers. Your stewardship of the Sinaloa Cartel is directly responsible for a large portion of the cocaine, heroin, methamphetamine, and marijuana sold in the United States that has resulted in thousands of deaths each year.

In addition to the cocaine you purchased from Colombian suppliers, you manufactured heroin, methamphetamine, and marijuana for distribution in the United States. You also oversaw a vast transportation infrastructure in Central America, where cocaine is received from Colombian sources of supply, and in Mexico, where multi-ton shipments of cocaine, heroin, methamphetamine, and marijuana are transported to the Mexico-U.S. border. As you grew in power, you established your own network in Colombia to eliminate the need for a Colombian middleman, giving you and your cartel a direct line to the source of the cocaine. You controlled corrupt government officials and law enforcement officers at all levels of the Mexican government, who protected the drug shipments and your workers as the drugs were transported across Mexico. You controlled border crossing sites into the United States, and used various means of smuggling drugs into the United States, including the construction of tunnels. You maintained drug distribution networks throughout the United States, and during your reign of power, maintained an arsenal of military-grade weapons for protection. Your heavily-armed private security forces were used not only as personal bodyguards, but also as protection for your drug shipments as they were transported throughout Mexico. You also maintained a stable of "sicarios" (hitmen), who carried out gruesome assassinations aimed at maintaining discipline within the Cartel, protecting against challenges from rivals, and silencing those who cooperated with law enforcement against your interests.

According to the USA/EDNY, the nature and circumstances of the charged offenses establish that you are a danger to the community, not only because of the virulent nature of your drug trafficking activity, but also because of your unrestrained use of violence.

During your three periods of incarceration in Mexico, you were able to continue managing your drug trafficking operations. You also successfully plotted escapes from jail, first in 2001 and again in 2015, using various methods of subterfuge, to include allegedly using your Mexican lawyers and family members to pass messages in and out of prison to individuals associated with the Sinaloa Cartel. In addition, your Mexican lawyers and family members were allegedly integrally involved in engineering your elaborate escape plan. Further, several employees at the prison were arrested and are being investigated by the Mexican Government for potential corruption associated with your escape in 2015. Once free, you continued to oversee the Cartel and its drug trafficking activities.

While incarcerated from 1993 to 2001, you continued to build your violent, multi-national and multi-billion dollar drug trafficking empire and continued to export thousands of kilograms of cocaine, heroin, methamphetamine, and marijuana into the United States. You escaped from prison in 2001, purportedly while hiding in a laundry cart. After your second arrest in February 2014, you continued to oversee and operate the Sinaloa Cartel, despite being incarcerated at the maximum security Altiplano Prison in Mexico. You engineered your escape from the prison through a mile-long tunnel in part by passing messages to family members and lawyers, and with the aid of the corrupt prison workers. The USA/EDNY believes that, based on your prior history, unless you are incarcerated under strict security arrangements, the risk of your continued criminal activity is certain.

In addition, you have a proven history of murdering individuals who you perceive as having provided information to law enforcement or acting against your interests. Therefore, witnesses for the government and their families, many of whom still reside outside of the U.S. and have no protection, would be in grave danger of physical harm, or even death, as reprisal for their cooperation with the government. The USA/EDNY believes that you will continue to be a danger if you are allowed to have access to other inmates and to communicate with others in the Sinaloa Cartel.

### B. Continued Need for SAM

According to the USA/EDNY, there is ample evidence that you are an extremely violent individual who, as one of the leaders of the Sinaloa Cartel, has unparalleled connections to its worldwide members. Given your leadership status, your demonstrated violent tendencies toward any threat to you and your organization, and your history of escapes from maximum security prisons, the USA/EDNY believes that, absent SAM, your unrestricted communications or contacts with other persons would pose a substantial risk of death or serious injury to the community. Furthermore, SAM are necessary to prohibit

all communications between you and your wife, Emma Coronel Aispuro, who conspired with you in activities of the Sinaloa Cartel and, in 2021, was convicted in the United States of federal narcotics and money laundering offenses.

## CONCLUSION

Based upon information provided regarding your proclivity for violence, it was found that there is substantial risk that your communications or contacts with persons could result in death or serious bodily injury to persons, or substantial damage to property that would entail the risk of serious bodily injury to persons. Therefore, pursuant to 28 C.F.R. § 501.3, we will continue to implement SAM to restrict your access to the mail, the media, the telephone, and visitors.

1) **General Provisions**

   a) **Adherence to Usual United States Marshals Service (USMS), BOP, and Detention Facility (DF) Policy Requirements** – In addition to the below-listed SAM, you must comply with all usual USMS, BOP, and non-BOP DF policies regarding restrictions, activities, privileges, communications, etc. If there is a conflict between USMS/BOP/DF policies and the SAM, as set forth herein, where the SAM are more restrictive than usual USMS/BOP/DF policies, then the SAM shall control. If usual USMS/BOP/DF policies are more restrictive than the SAM, then USMS/BOP/DF policies shall control.

   b) **Interim SAM Modification Authority** – During the term of this directive, the Director, Office of Enforcement Operations (OEO), Criminal Division, may modify your SAM as long as any SAM modification authorized by the OEO:

      i) Does not create a more restrictive SAM;

      ii) Is not in conflict with the request of the USA/EDNY, DEA/HSI/FBI, USMS/BOP/DF, or applicable regulations; and

      iii) Is not objected to by the USA/EDNY, DEA/HSI/FBI, or USMS/BOP/DF.

   c) **Inmate Communication Prohibitions** – You are limited, within the USMS/BOP/DF's reasonable efforts and existing confinement conditions, from having contact (including passing or receiving any oral, written, or recorded communications) with any other inmate, visitor, attorney, or anyone else, except as outlined and allowed by this document, that could reasonably foreseeably result in you communicating (sending or receiving) information that could circumvent the SAM's intent of significantly limiting your ability to communicate (send or receive) threatening information.

    The USMS/BOP/DF may permit you to communicate with other SAM inmates orally only during certain predesignated times, the place and duration to be set by the USMS/BOP/DF. You shall not have any physical contact with other inmates during this predesignated time and all such predesignated sessions may be monitored and/or recorded. Upon request of the DEA/HSI/FBI, a copy of the recordings will be provided by the USMS/BOP/DF to the DEA/HSI/FBI to be analyzed for indications that you are attempting to pass messages soliciting or encouraging acts of terrorism, violence, or other crimes.

 d) **Use of Interpreters/Translators by the USMS/BOP/DF** – Interpreter/translator approval requirement:

  i) The USMS/BOP/DF may use Department of Justice (DOJ) approved interpreters/translators as necessary for the purpose of facilitating communication with you.

  ii) No person shall act as an interpreter/translator without prior written clearance/approval from the USMS/BOP/DF, which shall only be granted after consultation with the USA/EDNY and DEA/HSI/FBI.

  iii) Interpreters/translators utilized by the USMS/BOP/DF shall not be allowed to engage in, or overhear, unmonitored conversations with you. Interpreters/translators shall not be alone with you, either in a room or on a telephone or other communications medium.

2) **Attorney-Client Provisions**

 a) **Attorney[1] Affirmation of Receipt of the SAM Restrictions Document** – Your attorney (or counsel) – individually by each if more than one – must sign an affirmation acknowledging receipt of the SAM restrictions document. By signing the affirmation, the attorney acknowledges his or her awareness and understanding of the SAM provisions and his or her agreement to abide by these provisions, particularly those that relate to contact between you and your attorney and the attorney's staff. The signing of the affirmation does not serve as an endorsement of the SAM or the conditions of confinement, and does not serve to attest to any of the factors set forth in the conclusions supporting the

---

[1] The term "attorney" refers to the inmate's attorney of record, who has entered an appearance in this criminal case, who has been verified and documented by the USA/EDNY, and who has received and acknowledged receipt of the SAM restrictions document. As used in this document, "attorney" also refers to more than one attorney where the inmate is represented by two or more attorneys, and the provisions of this document shall be fully applicable to each such attorney in his or her individual capacity.

**"Sensitive But Unclassified"**

    SAM. However, in signing the affirmation, your attorney and precleared staff[2] acknowledge the restriction that they will not forward third-party messages to or from you.

    i) The USA/EDNY shall present, or forward, the attorney affirmation of receipt of the SAM restrictions document to your attorney.

    ii) After initiation of the SAM and prior to your attorney being permitted to have attorney-client privileged contact with you, your attorney shall execute a document affirming receipt of the SAM restrictions document and return the original to the USA/EDNY.

    iii) The USA/EDNY shall maintain the original of the SAM acknowledgment document and forward a copy of the signed document to OEO in Washington, D.C., and the USMS/BOP/DF.

 b) **Attorney Use of Interpreters/Translators –**

    i) **Necessity Requirement** – No interpreter/translator shall be utilized unless absolutely necessary where you do not speak a common language with the attorney. Any interpreter/translator shall be precleared.[3]

    ii) **Attorney Immediate Presence Requirement** – Any use of an interpreter/translator by the attorney shall be in the physical and immediate presence of the attorney – i.e., in the same room. The attorney shall not patch through telephone calls, or any other communications, to or from you.

---

[2] "Precleared" when used with regard to an attorney's staff, or "precleared staff member," refers to a co-counsel, paralegal, or investigator who is actively assisting the inmate's attorney with the inmate's post-sentencing proceedings, who has submitted to a background check by the DEA/HSI/FBI and USA/EDNY, who has successfully been cleared by the DEA/HSI/FBI and USA/EDNY, and who has received a copy of the inmate's SAM and has agreed – as evidenced by his or her signature – to adhere to the SAM restrictions and requirements. As used in this document, "staff member" also refers to more than one staff member, and the provisions of this document shall be fully applicable to each such staff member in his or her individual capacity. A "paralegal" will also be governed by any additional DF rules and regulations concerning paralegals.

[3] "Precleared," when used with regard to an interpreter/translator, refers to an interpreter/translator who is actively assisting the inmate's attorney with the inmate's sentencing or post-conviction proceedings, who has submitted to a background check by the HSI and USA/EDNY, who has successfully been cleared by the HSI and USA/EDNY, and who has received a copy of the inmate's SAM and has agreed – as evidenced by his or her signature – to adhere to the SAM restrictions and requirements.

**"Sensitive But Unclassified"**

- iii) **Translation of Inmate's Correspondence** – An attorney of record may only allow a precleared interpreter/translator to translate your correspondence as necessary for attorney-client privileged communication.

c) **Attorney-Client Privileged Visits** – Attorney-client privileged visits may be contact or non-contact, at the discretion of the USMS/BOP/DF.

d) **Attorney May Disseminate Inmate Conversations** – Your attorney may disseminate the contents of your communication to third parties for the sole purpose of preparing your post-sentencing proceedings – and not for any other reason – on the understanding that any such dissemination shall be made solely by your attorney, and not by the attorney's staff.

e) **Unaccompanied Attorney's Precleared Paralegal(s) May Meet With Client** – Your attorney's precleared paralegal(s) may meet with you without the need for your attorney to be present. These meetings may be contact or non-contact, at the discretion of the USMS/BOP/DF.

f) **Simultaneous Multiple Legal Visitors** – You may have multiple legal visitors provided that at least one of the multiple legal visitors is your attorney or precleared paralegal. These meetings may be contact or non-contact, at the discretion of the USMS/BOP/DF. An investigator or interpreter/translator may not meet alone with you.

g) **Legally Privileged Telephone Calls** – The following rules refer to all legally privileged telephone calls or communications:

- i) **Inmate's Attorney's Precleared Staff May Participate in Inmate Telephone Calls** – Your attorney's precleared staff are permitted to communicate directly with you by telephone, provided that your attorney is physically present and participating in the legal call, as well.

- ii) **Inmate's Initiation of Legally Privileged Telephone Calls** – Your initiated telephone communications with your attorney or precleared staff are to be placed by a USMS/BOP/DF staff member and the telephone handed over to you only after the USMS/BOP/DF staff member confirms that the person on the other end of the line is your attorney. This privilege is contingent upon the following additional restrictions:

    (1) Your attorney will not allow any non-precleared person to communicate with you, or to take part in and/or listen to or overhear any communications with you.

   (2) Your attorney must instruct his or her staff that:

     (a) Your attorney and precleared staff are the only persons allowed to engage in communications with you.

     (b) Your attorney's staff (including the attorney) are not to patch through, forward, transmit, or send your calls, or any other communications, to third parties.

   (3) No telephone call/communication, or portion thereof, except as specifically authorized by this document:

     (a) Is to be overheard by a third party.[4]

     (b) Will be patched through, or in any manner forwarded or transmitted, to a third party.

     (c) Shall be divulged in any manner to a third party, except as otherwise provided in Section 2.d. above.

     (d) Shall be in any manner recorded or preserved.[5] Your attorney may make written notes of attorney-client privileged communications.

   (4) If the USMS/BOP/DF, DEA/HSI/FBI, or USA/EDNY determines that you have used or are using the opportunity to make a legal call to speak with another inmate or for any other non-legal reason that would circumvent the intent of the SAM, your ability to contact your attorney by telephone may be suspended or eliminated.

 h) **Documents Provided by Attorney to Inmate** – During a visit, your attorney may provide you with, or review with you, documents related to your post-sentencing proceedings, and/or material prepared by your attorney relating to such proceedings, so long as any of the foregoing documents are translated, if translation is necessary, by a precleared interpreter/translator. Any documents not related to your post-sentencing proceedings must be sent to you via general correspondence and will be subject to the mail provisions of subparagraphs 2.i. and 3.g. Documents previously reviewed and cleared for

---

[4] For purposes of the SAM, "third party" does not include officials of the USMS/BOP/DF, DEA/HSI/FBI, DOJ, or other duly authorized federal authorities when acting in connection with their official duties. This section does not allow monitoring of attorney-client privileged communications.

[5] Except by the USMS/BOP/DF, DEA/HSI/FBI, DOJ, or other duly authorized federal authorities. This section does not allow monitoring of attorney-client privileged communications.

        receipt by you, and already in your possession at the outset of the visit, may be discussed or reviewed by you and your attorney during the visit.

        i) None of the materials provided may include inflammatory materials, materials inciting violence, military training materials, or materials that may be used to pass messages from inmate to inmate, unless such materials have been precleared by the USA/EDNY and DEA/HSI/FBI.

        ii) The USA/EDNY may authorize additional documents to be presented to you. If any document not listed or described above needs to be transmitted to you, consent for the transmission of the document may be obtained from the USA/EDNY without the need to formally seek approval for an amendment to the SAM.

i) **Legal Mail**[6] – Your attorney may not send, communicate, distribute, or divulge your mail (legal or otherwise), or any portion of its contents, to third parties, except when disclosure of the contents is necessary for the sole purpose of providing necessary legal services related to your post-sentencing proceedings – and not for any other reason.

    In signing the SAM acknowledgment document, your attorney and precleared staff will acknowledge the restriction that only your case-related documents will be presented to you, and that your attorney and his or her staff are strictly prohibited from forwarding third-party mail to or from you.

3) **Inmate's Non-legal Contacts**

    a) **Non-legally Privileged Telephone Contacts –**

        i) You are only authorized to have non-legally privileged telephone calls with your immediate family members.[7] However, you shall not be permitted to have telephone contact with your wife, Emma Coronel Aispuro.

        ii) The quantity and duration of your non-legally privileged telephone calls with your immediate family members, except Emma Coronel Aispuro, shall be set by the USMS/BOP/DF, with a minimum of one call per month.

---

[6] "Legal Mail" is defined as properly marked correspondence (marked "Legal Mail") addressed to or from the inmate's attorney. All other mail, including that otherwise defined by the USMS/BOP/DF as Special Mail, shall be processed as "non-legal mail."

[7] The inmate's "immediate family members" are defined as the inmate's (USMS/BOP/DF- or DEA/HSI/FBI-verifiable) spouse, children, parents, and siblings. Requests for additional non-legal contacts may be submitted and will be considered on a case-by-case basis.

**"Sensitive But Unclassified"**

b) **Rules for Telephone Calls** – For all non-legally privileged telephone calls or communications, no telephone call/communication, or portion thereof:

  i) Is to be overheard by a third party.

  ii) Is to be patched through, or in any manner forwarded or transmitted, to a third party.

  iii) Shall be divulged in any manner to a third party.

  iv) Shall be in any manner recorded or preserved.[8]

  All telephone calls shall be in English unless a fluent USMS/BOP/DF- or DEA/HSI/FBI-approved interpreter/translator is available to contemporaneously monitor the telephone call. Arranging for an interpreter/translator may require at least fourteen (14) days advance notice.

c) **Telephone SAM Restriction Notifications** – For all non-legally privileged telephone calls to your immediate family member(s), except Emma Coronel Aispuro:

  i) The USMS/BOP/DF shall inform you of the telephone SAM restrictions prior to each telephone call.

  ii) The USMS/BOP/DF shall verbally inform your immediate family member(s), except Emma Coronel Aispuro, on the opposite end of your telephone communication of the SAM restrictions. The USMS/BOP/DF is only required to notify your communication recipient in English.

  iii) The USMS/BOP/DF shall document each such telephone notification.

d) **Family Call Monitoring** – All calls with your immediate family member(s), except Emma Coronel Aispuro, may be:

  i) Contemporaneously monitored by the DEA/HSI/FBI.

  ii) Contemporaneously recorded (as directed by the DEA/HSI/FBI) in a manner that allows such telephone calls to be analyzed for indications the call is being used to pass messages soliciting or encouraging acts of violence or other crimes, or to otherwise attempt to circumvent the SAM.

---

[8] Except by the USMS/BOP/DF, DEA/HSI/FBI, DOJ, or other duly authorized federal authorities.

**"Sensitive But Unclassified"**

   iii) A copy of each telephone call recording involving an inmate/immediate family member shall be provided to the DEA/HSI/FBI by the USMS/BOP/DF. These recordings shall be forwarded on a call-by-call basis as soon as practicable.

 e) **Improper Communications** – If telephone call monitoring or analysis reveals that any call or portion of a call involving you contains any indication of a discussion of illegal activity, the soliciting of or encouraging of acts of violence or other crimes, or actual or attempted circumvention of the SAM, you shall not be permitted any further calls to your immediate family for a period of time to be determined by the USMS/BOP/DF. If contemporaneous monitoring reveals such inappropriate activity, the telephone call may be immediately terminated.

 f) **Non-legal Visits** –

  i) **Limited Visitors** – You shall be permitted to visit only with your immediate family members. However, you shall not be permitted to visit with Emma Coronel Aispuro. The visitor's identity and family member relationship to you will be confirmed by the USMS/BOP/DF and DEA/HSI/FBI in advance.

  ii) **English Requirement** – All communications during non-legal inmate visits will be in English unless a fluent USMS/BOP/DF- or DEA/HSI/FBI-approved interpreter/translator is readily available to contemporaneously monitor the communication/visit. Arranging for an interpreter/translator may require at least fourteen (14) days advance notice.

  iii) **Visit Criteria** – All non-legal visits shall be:

   (1) Contemporaneously monitored by the USMS/BOP/DF and/or DEA/HSI/FBI, in a manner that allows such visits to be analyzed for indications the visit is being used to pass messages soliciting or encouraging acts of violence or other crimes, or to otherwise attempt to circumvent the SAM.

   (2) Permitted only with a minimum of fourteen (14) calendar days advance written notice to the USMS/BOP/DF facility where you are housed.

   (3) Without any physical contact. All such meetings shall be non-contact to protect against harm to visitors or staff.

   (4) Limited to one adult visitor at a time. However, your DEA/HSI/FBI-verified children may visit with a pre-approved adult visitor. Because

       the mother of your minor children is not authorized to visit with you, your attorney or a pre-cleared paralegal are authorized to accompany your children during visits with you, if the attorney and paralegal satisfy the requirements for each as defined in Section2 ("Attorney-Client Provisions") of this document.

g) **Non-legal Mail** – Non-legal mail is any mail not clearly and properly addressed to/from your attorney and marked "Legal Mail" (incoming or outgoing). In addition to non-legal mail from your attorney, as discussed in subparagraph 2.h., non-legal mail is only authorized with your immediate family, U.S. courts, federal judges, U.S. Attorneys' Offices, members of U.S. Congress, the BOP, or other federal law enforcement entities.

    i) **General correspondence with limitations** – Correspondence is only authorized with immediate family members (excluding Emma Coronal Aispuro). The volume and frequency of outgoing general correspondence with immediate family members may be limited to three pieces of paper (not larger than 8 ½" by 11"), double-sided, once per calendar week to a single recipient, at the discretion of the USMS/BOP/DF. The identity and family member relationship to you will be confirmed by the USMS/BOP/DF and DEA/HSI/FBI.

    ii) **General correspondence without limitations** – There is no volume or frequency limitation on correspondence to U.S. courts, federal judges, U.S. Attorneys' Offices, members of U.S. Congress, the BOP, and other federal law enforcement entities, unless there is evidence of abuse of these privileges, threatening correspondence is detected, circumvention of the SAM is detected, or the quantity to be processed becomes unreasonable to the extent that efficient processing to protect the security, good order, or discipline of the institution, the public, or national security may be jeopardized.

    iii) All non-legal mail shall be –

        (1) **Copied** – Shall be copied (including the surface of the envelope) by the warden, or his or her designee, of the facility in which you are housed.

        (2) **Forwarded** – Shall be forwarded, in copy form, to the location designated by the DEA/HSI/FBI.

        (3) **Analyzed** – After government analysis and approval, if appropriate, your incoming/outgoing non-legal mail shall be forwarded to the

       USMS/BOP/DF for delivery to you (incoming), or directly to the addressee (outgoing).

  iv) The federal government shall forward your non-legal mail to the USMS/BOP/DF for delivery to you or directly to the addressee after a review and analysis period of:

    (1) A reasonable time not to exceed fourteen (14) business days for mail that is written entirely in the English language.

    (2) A reasonable time not to exceed sixty (60) business days for any mail that includes writing in any language other than English, to allow for translation.

    (3) A reasonable time not to exceed sixty (60) business days for any mail where the federal government has reasonable suspicion to believe that a code was used, to allow for decoding.

  v) **Mail Seizure** – If outgoing/incoming mail is determined by the USMS/BOP/DF or DEA/HSI/FBI to contain overt or covert discussions of or requests for illegal activities, the soliciting or encouraging of acts of violence or other crimes, or actual or attempted circumvention of the SAM, the mail shall not be delivered/forwarded to the intended recipient but referred to the DEA, HSI, FBI for appropriate action. You shall be notified in writing of the seizure of any mail.

4) **Communication with News Media**

You shall not be permitted to speak, meet, correspond, or otherwise communicate with any member or representative of the news media in person; by telephone; by furnishing a recorded message; through the mail, your attorney, or a third party; or otherwise.

5) **Religious Visitation**

  a) If a USMS/BOP/DF- and/or DEA/HSI/FBI-approved religious representative is to be present for prayer with you, the prayer shall be conducted as part of a contact or non-contact visit, at the discretion of the USMS/BOP/DF.

6) **No Communal Cells and No Communication Between Cells**

  a) You shall not be allowed to share a cell with another inmate.

b) You shall be limited within the USMS/BOP/DF's reasonable efforts and existing confinement conditions, from communicating with any other inmate by making statements audible to other inmates or by sending notes to other inmates.

7) **Cellblock Procedures**

   a) You shall be kept separated from other inmates as much as possible while in the cellblock area.

   b) You shall be limited, within the USMS/BOP/DF's reasonable efforts and existing confinement conditions, from communicating with any other inmate while in the cellblock area.

8) **Access to Mass Communications**

   To prevent you from receiving and acting upon critically timed information or information coded in a potentially undetectable manner, your access to materials of mass communication is restricted as follows:

   a) **Publications/Newspapers –**

      i) You may have access to publications determined not to facilitate criminal activity or be detrimental to national security; the security, good order, or discipline of the institution; or the protection of the public. This determination is to be made by the USMS/BOP/DF, in consultation with the USA/EDNY. You may correspond with the publishing company regarding technical aspects of the publication, i.e., availability of particular volumes, billing questions, etc. The review of this correspondence will be in accordance with section 8(a)(iii), below.

      ii) Sections of any publication/newspaper that offer a forum for information to be passed by unknown and/or unverified individuals, including but not limited to classified advertisements and letters to the editor, should be removed from the publications/newspapers prior to distribution to you.

      iii) If restricted by the USMS/BOP/DF rules, access to a publication will be denied. If acceptable, upon delivery, the USMS/BOP/DF will review the publication and make the initial determination. If the DEA's, HSI's, or FBI's expertise is required, the publication will be forwarded to the DEA, HSI, or FBI for review. The USMS/BOP/DF will also forward the publication to the DEA, HSI, or FBI if translations are needed to make that determination. (In these cases, the DEA, HSI, or FBI shall respond to the USMS/BOP/DF within fourteen (14) business days.) You shall then have

    access to the remaining portions of the publications/newspapers deemed acceptable, in accordance with USMS/BOP/DF policy.

  iv) In order to avoid passing messages/information from inmate to inmate, you shall be allowed to share institutionally purchased publications/newspapers with other SAM inmates only after each publication/newspaper is physically screened by staff to ensure that messages cannot be passed between the SAM inmates. Publications/newspapers purchased by you may not be shared with any other inmate.

 b) **Television and Radio** – You are authorized to have television and radio viewing and listening privileges, in accordance with standard and applicable USMS/BOP/DF policies and procedures.

 c) **Termination or Limitation** – If the USMS/BOP/DF determines that mass communications are being used as a vehicle to send messages to you relating to the furtherance of violent or criminal activities, your access may be limited or terminated for a period of time to be determined by the USMS/BOP/DF.

9) **Access to Books**

 a) You may have access to all books that do not facilitate criminal activity or present a substantial threat to national security, discipline, or good order of the institution. This initial determination is to be made by the USMS/BOP/DF and, if the USMS/BOP/DF determines that the DEA's, HSI's, or FBI's expertise is required, the book(s) will be forwarded to the DEA/HSI/FBI for review. In conducting its analysis, the DEA/HSI/FBI will determine whether the book advocates or promotes acts of violence or other crimes and/or whether access to the book by you would pose a substantial threat to national security.

 b) In order to avoid passing messages/information from inmate to inmate, you shall be allowed to share institutionally purchased books with other SAM inmates only after each book is physically screened to ensure that messages cannot be passed between the SAM inmates. Books individually purchased by you may not be shared with any other inmate.

10) **Transfer of Custody**

In the event that you are transferred to or from the custody of the USMS, BOP, or any other DF, the SAM provisions authorized for you shall continue in effect, without need for any additional DOJ authorization.

11) <u>**Inmate's Consular Contacts**</u>

    You, who are a citizen of a foreign country, shall be allowed Consular communications and visits, consistent with USMS/BOP/DF policy. The Consular contacts shall comply with the U.S. Department of State (DOS) Consular notification and access requirements. Prior to permitting any Consular contact, the FBI/DEA/HIS will verify the Consular representative's credentials with the DOS.[9] Any Consular visit with this inmate shall be monitored and recorded and any incoming or outgoing Consular mail to or from this inmate may be reviewed, at the discretion of FBI/DEA/HIS. DOS has concurred with the proposed monitoring and review by FBI/DEA/HIS.

**CONCLUSION**

    The SAM set forth herein, especially as they relate to attorney-client privileged communications and family contact, are reasonably necessary to prevent you from committing, soliciting, or conspiring to commit additional criminal activity. Moreover, these measures are the least restrictive that can be tolerated in light of your ability to aid, knowingly or inadvertently, in plans that create a substantial risk that your communications or contacts with persons could result in death or serious bodily injury to persons.

    With respect to telephone privileges, the SAM are reasonably necessary because of the high probability of calls to others to arrange, inspire, or incite terrorist or criminal activities.

    With respect to mail privileges, the SAM are necessary to prevent you from receiving or passing along critically timed messages. Accordingly, your interest in the timely receipt and/or submission of mail, with the possible danger the contents of the mail may pose to others has been weighed. It has been determined that delaying mail delivery to allow authorized personnel to examine a copy of the mail is the least restrictive means available to ensure that the mail is not being used to deliver requests for, or to assist in, violent threats, and/or criminal acts against government witnesses or others.

    The SAM's prohibition of contact with the media is reasonably necessary. Communication with the media could pose a substantial risk to public safety if you

---

[9] *See* DOS's Consular Notification and Access, Instructions for Federal, State, and Local Law Enforcement and Other Officials Regarding Foreign Nationals in the United States and the Rights of Consular Officials to Assist Them, DOS. The DOS contact is the Consular Notification and Outreach Division, Office of Policy Coordination and Public Affairs, DOS, telephone (202) 485-7703 or <u>http://travel.state.gov/law/consular/consular_753.html</u>.

**"Sensitive But Unclassified"**

advocate terrorist, criminal and/or violent offenses, or if you make statements designed to incite such acts. Based upon your past behavior, it would be unwise to wait until after you solicit or attempt to arrange a violent or terrorist act to justify such media restrictions.

The SAM's limitations on access to mass communications are reasonably necessary to prevent you from receiving and acting upon critically timed messages. Such messages may be placed in advertisements or communicated through other means, such as the television and/or radio. It is believed that limiting and/or delaying media access may interrupt communication patterns you may develop with the outside world, and ensure that the media is not used to communicate information that furthers terrorist, violent, and/or criminal activities.

These conditions are imposed by the USMS/BOP/DF at the request of the Attorney General, through his designated agent, the Deputy Assistant Attorney General.

Received: _February 17/p_, 2022
(17 pages)

_____
Joaquin Guzman
Reg. No. 89914-053

**"Sensitive But Unclassified"**