## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 21-cv-02794-WJM-MEH

JOAQUIN A. GUZMAN LOREA,

      Plaintiff,

v.

B. TRUE, individually, and in his official capacity as Complex Warden of the United States Penitentiary Florence ADMAX,
HOLBROOKS, individually, and in his official capacity as Prisoner Counselor at United States Penitentiary Florence ADMAX,
MERRICK GARLAND, in his official capacity as Attorney General of the United States,
MICHAEL CARVAJAL, in his official capacity as Director of Bureau of Prisons,
DOES 1-5, individually, and in his, hers, or their official capacities as Medical Staff at United States Penitentiary Florence ADMAX, and
DOES 6-10, individually, and in his, hers, or their official capacities as Educational Staff at United States Penitentiary Florence ADMAX,

      Defendants.

---

## MOTION TO DISMISS PURSUANT TO RULES 12(b)(1) AND 12(b)(6)

Plaintiff Guzman challenges his confinement at ADX, including rules imposed by Special Administrative Measures, or "SAMs," which the Attorney General has imposed to defuse the risk that Guzman's communications will trigger new acts of violence. No claim should proceed.[1]

Guzman—the notorious "El Chapo"—is an inmate like no other. The long-time head of the Sinaloa Cartel, "the largest and most powerful drug trafficking organization in the Western Hemisphere," Guzman spearheaded the importation of millions of kilograms of illegal drugs into the United States. *United States v. Guzman Loera*, 24 F.4th 144, 149 (2d Cir. 2022); Feb. 7, 2022

---

[1] **CONFERRAL:** Undersigned counsel has conferred with Guzman's counsel multiple times in detail regarding the substance of this motion and whether Guzman wishes to amend any claims or allegations. In response, Guzman's attorney advised that Guzman disagrees with the arguments and does not want to amend at this time. The government does not believe the deficiencies in the complaint are correctable by amendment.

SAMs, Ex. 1 at 1.[2] Guzman has left a trail of death and destruction in his wake. Ex. 1 at 2

(describing "torture and murder," "gruesome assassinations," and "unrestrained violence"). In light

of Guzman's "proven history" of murder, the Attorney General has concluded that witnesses

against Guzman remain "in grave danger" of death. *Id.* (estimating "thousands of deaths").

 The reach of Guzman's tentacles outside the prison makes managing him an exceptionally

dangerous and difficult task. He escaped from two maximum-security prisons in Mexico, once

"after digging a mile-long tunnel starting under his cell." *Guzman Loera*, 24 F.4th at 150; Ex. 1 at

3 (Guzman engineered tunnel escape "by passing messages to family members and lawyers").

From prison, Guzman had "prospective witnesses murdered, brib[ed] prison officials, and us[ed]

third parties to continue to manage the Sinaloa Cartel." *See* 24 F.4th at 152; *see also* Ex. 1 at 3

 For Guzman, violence is a family affair. Four of his sons—known as the "Chapitos"—have

been indicted for their roles in the Cartel but remain at large.[3] *United States v. Beltran-Leon*, 9

F.4th 485, 489 (7th Cir. 2021) (two sons led Cartel cell); *United States v. Castro-Aguirre*, 983 F.3d

927, 937 (7th Cir. 2020) (another son responsible for murder). A cousin was Guzman's

"lieutenant" and "right-hand man" in the Cartel. *United States v. Valenzuela*, 849 F.3d 477, 486,

489 (1st Cir. 2017). Most notable of all is Guzman's wife, Emma Coronel Aispuro. Coronel, who

---

[2] The Court may take judicial notice of facts regarding the criminal backgrounds of Guzman and his co-conspirators that bear on his ADX confinement and thus "have a direct relation to matters at issue" in this case. *St. Louis Baptist Temple, Inc. v. FDIC*, 605 F.2d 1169, 1172 (10th Cir. 1979). The Court also may consider Guzman's SAMs, which are referenced in his complaint and are central to his claims here. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); *Gee v. Pacheco*, 627 F.3d 1178, 1186 (10th Cir. 2010); Compl. ¶ 29.
[3] *See* Joaquin Guzman Lopez/Ovidio Guzman Lopez Indictment, available at https://www.justice.gov/opa/press-release/file/1134166/download; Ivan Archivaldo Guzman-Salazar Indictment, available on PACER, https://ecf.casd.uscourts.gov/doc1/03719556576; Jesus Alfredo Guzman-Salazar Indictment, Ex. 2 & ECF No. 421 (granting motion to unseal), available on PACER, https://ecf.ilnd.uscourts.gov/cgi-bin/DktRpt.pl?126127687645511-L_1_0-1.

is serving time in federal prison for her crimes in furtherance of the Cartel's drug-trafficking activities, literally grew up in the Cartel: she is the daughter of Cartel member Ines Coronel Barreras, who coordinated narcotics transports for Guzman. *See* Affidavit Complaint/Arrest Warrant ¶¶ 15, 19, 25-28, available on PACER, https://ecf.dcd.uscourts.gov/doc1/04518340753. Coronel is prohibited from communicating with her husband. Ex. 1 at 3-4.

Guzman's claims against Defendants[4] arise in this context, where past maximum-security confinement failed to stop him from using his "unparalleled connections" outside the prison—including his own family—to run the Sinaloa Cartel and to order the deaths of those who got in his way. *Id.* at 3; *see also Gee*, 627 F.3d at 1185 (recognizing "importance of context to a plausibility determination") (citing *Ashcroft v. Iqbal*, 556 U.S. 662 (2009))). Each official-capacity claim fails.

## ARGUMENT

### I.     The ADX conditions-of-confinement claim fails (Claim 1).

Guzman alleges that the "totality of conditions" at ADX combine to constitute cruel and unusual punishment. Compl. ¶ 118. The Supreme Court and Tenth Circuit have rejected "overall conditions" claims under the Eighth Amendment, including such claims about ADX.

"Nothing so amorphous as 'overall conditions' can rise to the level of cruel and unusual punishment when no specific deprivation of a single human need exists." *Wilson v. Seiter*, 501 U.S. 294, 305 (1991). Under the Eighth Amendment, conditions may only be analyzed in combination "when they have a mutually enforcing effect that produces the deprivation of a single,

---

[4] Undersigned counsel represents Defendants in their official capacities only. Defendants have not requested personal representation because Guzman seeks only injunctive relief. Compl. at 37-38; *Matthews v. Wiley*, 744 F. Supp. 2d 1159, 1167 (D. Colo. 2010) ("a *Bivens* action is, by definition, a damages action against a federal officer in his or her individual capacity"); *Arocho v. Nafziger*, 367 F. App'x 942, 946 n.3 (10th Cir. 2010) ("*Bivens* suits are limited to damages") (citing *Simmat v. U.S. Bureau of Prisons*, 413 F.3d 1225, 1236 (10th Cir. 2005)). Moreover, Guzman has not served the individuals in their personal capacities. ECF No. 11-1 at 2; Fed. R. Civ. P. 4(e)(2).

identifiable human need such as food, warmth, or exercise—for example, a low cell temperature at night combined with a failure to issue blankets." *Id.* at 304. Thus, in order to state a claim, "a plaintiff must allege an 'unquestioned and serious deprivation of basic human needs.'" *Gowadia v. Stearns*, 596 F. App'x 667, 674 (10th Cir. 2014).

Based on this precedent, the Tenth Circuit and this Court repeatedly have held that the alleged "solitary confinement" of ADX—including for inmates subject to SAMs—does not violate the Eighth Amendment. *Gowadia*, 596 F. App'x at 674; *Silverstein v. Fed. Bureau of Prisons*, 559 F. App'x 739, 756, 759 (10th Cir. 2014); *Ajaj v. United States*, 293 F. App'x 575, 582-84 (10th Cir. 2008); *Hill v. Pugh*, 75 F. App'x 715, 721 (10th Cir. 2003); *Davis v. Fed. Bureau of Prisons*, No. 15-cv-0884-WJM-MJW, 2016 WL 1156755, at *6 (D. Colo. Mar. 24, 2016); *McMillan v. Wiley*, 813 F. Supp. 2d 1238, 1250-51 (D. Colo. 2011). Nothing distinguishes Guzman's claim from these numerous failed attempts to show that ADX conditions are so "extreme" as to deprive inmates of "the minimal civilized measure of life's necessities." *Farmer v. Brennan*, 511 U.S. 825, 834, 837, 839 (1994); *Hudson v. McMillian*, 503 U.S. 1, 8-9 (1992).

Guzman contends that he ordinarily receives only "three hours a week," and sometimes less, "of outdoor exercise," Compl. ¶¶ 32, 35, but the Tenth Circuit has made clear this is not a deprivation of constitutional magnitude. *Ajaj*, 293 F. App'x at 584 (complete denial of outdoor recreation for an entire year "is not sufficiently serious to implicate the Eighth Amendment"). The same goes for Guzman's alleged lack of access to "educational programming." Compl. ¶¶ 117-118. "[F]ederal prison officials [have] full discretion to control" prison conditions, including "eligibility for rehabilitative programs in the federal system," and there is no statutory or constitutional right to participate in such programs while incarcerated. *Moody v. Daggett*, 429 U.S. 78, 88 n.9 (1976)).[5]

---

[5] *E.g.*, *Standifer v. Ledezma*, 653 F.3d 1276, 1280 (10th Cir. 2011); *Podhorn v. Grondolsky*, 350 F. App'x 618, 620 (3d Cir. 2009); *McBride v. Powers*, 364 F. App'x 867, 870-71 (5th Cir. 2010).

Nor can an inference of constitutionally "extreme" conditions be drawn from Guzman's objection to the operation of the ADX HVAC system. Compl. ¶¶ 75, 117-119 ("hot air" allegedly blown into his cell for 15-minute periods "four to five times" throughout the night). The fact that the temperature occasionally may not comport with Guzman's personal comfort does not plausibly show a deprivation of the minimal civilized measure of life's necessities. *See Strope v. Sebelius*, 189 F. App'x 763, 766 (10th Cir. 2006) (improper ventilation and exposure to temperatures inmate finds "excessively hot" not cruel and unusual punishment). Quite the opposite: the intermittent introduction of warmer air into Guzman's cell demonstrates that ADX has an operational HVAC system regulated to maintain a consistent average temperature throughout the prison. Guzman's idiosyncratic reaction—that the intermittent warmer air wakes him up, makes his "heart palpitat[e]," and, "upon information and belief," elevates his blood pressure, Compl. ¶¶ 65, 76, 119[6]—does not make out a constitutional claim. It is well-settled that the Constitution "does not mandate comfortable prisons," and that prison conditions may be "restrictive and even harsh" without offending the Constitution. *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981).[7]

Finally, Guzman's objection to the "quantity and quality" of his meals, which leave him feeling "hungry," Compl. ¶ 71, does not implicate the Eighth Amendment. Guzman does not allege that he is deprived of meals or precluded from receiving BOP's standardized National Menu, which is annually reviewed by a registered dietician to ensure nutritional content. Program

---

[6] Guzman does not claim that any medical provider has found a correlation between these complaints and the "hot air" from the HVAC system. And his "information and belief" allegations, about matters within his knowledge, are not entitled to the presumption of truth. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 551 (2007); *Mann v. Palmer*, 713 F.3d 1306, 1315 (11th Cir. 2013).

[7] Without the warm air, Guzman probably would gripe, as he has done in the past, that his cell is too cold. *Guzman Loera*, 24 F.4th at 152 (noting Guzman's claim that, "with erratic air-conditioning, he often lacked enough warm clothing to avoid shivering" in concluding that his pretrial conditions did not prevent him from assisting with his defense and receiving a fair trial).

Statement P4700.06, *Food Service Manual* (Sept. 13, 2011), at 17-18.[8] Nor does he allege that his

health is in jeopardy because he is too thin, or that a health care provider has found that he has a

medical need (as opposed to a mere desire) for larger portions than other inmates. *See Berry v.*

*Brady*, 192 F.3d 504, 508 (5th Cir. 1999) (no Eighth Amendment violation where inmate did not

allege specific physical harm other than "hunger pains"). In short, Guzman has not alleged—nor

could he—that he is denied a "nutritionally and calorically adequate diet." *Id.*

      At bottom, Guzman has not come close to pleading that he faces objectively inhumane

prison conditions at ADX, much less that any prison official imposed those conditions with a

criminally reckless state of mind evincing "deliberate indifference" to his health or safety. *Farmer*,

511 U.S. at 839-40 (adopting "subjective recklessness as used in the criminal law … as the test for

'deliberate indifference' under the Eighth Amendment"). The conditions claim cannot proceed.

## II.    The mail-interference claim fails (Claim 2).

      Guzman's claim hinges on one delay: it allegedly took ten months for his sister and

daughters to receive a letter he wrote in October 2019. Compl. ¶¶ 68, 126-127, 129.[9] While he

claims not to challenge "the lawfulness of the SAMs," *id.* at 9 n.1, he seeks an order shortening the

review period for social mail from 60 business days to seven calendar days. *Id.* at 38; Ex. 1

¶ III.g.iv.2. The claim fails for lack of subject-matter jurisdiction and failure to state a claim.

### A.    Guzman cannot establish subject-matter jurisdiction.

#### 1.    No standing: Guzman faces no certainly impending injury.

---

[8] Available at https://www.acfsa.org/documents/stateRegulations/Fed_Food_Manual_PS_4700-006.pdf.; *Matthews*, 744 F. Supp. 2d at 1172 (BOP policies are subject to judicial notice).

[9] Guzman vaguely alludes to "other letters" that "took months to receive," Compl. ¶ 68, but fails to allege supporting facts he would know. *See Khalik v. United Airlines*, 671 F.3d 1188, 1194 (10th Cir. 2012) (claim not plausible where it rested on conclusory allegations and omitted "details the Plaintiff should know and could properly plead to satisfy the plausibility requirement").

"To establish Article III standing, an injury must be concrete, particularized, and actual or imminent; fairly traceable to the challenged action; and redressable by a favorable ruling." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (cleaned up). Because the allegedly delayed letter was already delivered, Guzman seeks no relief related to that letter. Instead, he seeks a forward-looking injunction regarding the handling of potential future letters. For such relief, the Supreme Court has "repeatedly reiterated" that the "threatened injury must be *certainly impending* to constitute injury in fact, and that allegations of *possible* future injury are not sufficient." *Id.*

Even countenancing Guzman's allegation about a past delay, a single mail delay almost three years ago is insufficient to show that he faces a "certainly impending" injury required for prospective relief. *City of Los Angeles v. Lyons*, 461 U.S. 95, 105-107 (1983) (plaintiff lacked standing to seek injunction against police department's chokehold policy; he "may have been illegally choked" in the past, but that "does nothing to establish a real and immediate threat" that he would be in the future, and allegations that police "routinely apply" the policy did not establish a case or controversy); *Buchwald v. Univ. of N.M. Sch. of Medicine*, 159 F.3d 487, 493 (10th Cir. 1998) (no standing where student who challenged admissions policy sought permanent injunction prohibiting school from considering certain factor in future admissions).

In fact, Guzman's letters to his sister and daughters have *not* been delayed by government officials at any point during his incarceration at ADX, including in the fall of 2019. Since Guzman arrived at ADX on July 19, 2019, he has asked to send 13 letters to his sister and daughters, each of which was analyzed, approved, and mailed within the SAMs timeframe. Decl. of SIS Technician Turner, Ex. 3 ¶¶ 16-21.[10] In 2019 specifically, Guzman submitted one letter for review on

---

[10] The same is true of the only two incoming letters from Guzman's sister, both of which have been timely processed and approved for Guzman to receive. Ex. 3 ¶ 22.

September 1, 2019, which was analyzed and approved for mailing on September 17, 2019. *Id.* ¶ 17. Guzman submitted another letter on December 1, 2019, which was analyzed and approved for mailing on January 22, 2020. *Id.* ¶ 18. Following approval, both letters were promptly mailed. *Id.* ¶¶ 14, 17-18. This record of consistent compliance with SAMs mail-review procedures precludes Guzman from showing that he faces a certainly impending future injury.

In sum, Guzman cannot show an injury stemming from one delayed letter in the past, nor can he establish a certainly impending future injury. Standing is lacking.

### 2. Not ripe: There are no facts about conjectural future mail delays.

Nor can Guzman establish that any claim about a conjectural future mail delay is ripe for adjudication, resting as it does upon "'contingent future events that may not occur as anticipated, or indeed may not occur at all.'" *Texas v. United States*, 523 U.S. 296, 300, 302 (1998). The question is not constitutionally ripe because it cannot be presented in "clean-cut and concrete form." *Keyes v. Sch. Dist. No. 1, Denver, Colo.*, 119 F.3d 1437, 1443 (10th Cir. 1997). Absent any evidence of a concrete, actual, or imminent injury stemming from any future mail delay, the Court could do no more than issue an advisory opinion, which the Constitution prohibits. *Morgan v. McCotter*, 365 F.3d 882, 891 (10th Cir. 2004). Nor can Guzman satisfy the prudential aspects of ripeness, which turn on "both the 'fitness of the issues for judicial decision' and the 'hardship to the parties of withholding court consideration.'" *Ohio Forestry Ass'n, Inc. v. Sierra Club*, 523 U.S. 726, 733 (1998). The lack of facts renders a hypothetical future delay unfit for decision now, and Guzman faces no hardship if he must raise the issue in a specific context and allege how government officials engaged in irrational decisionmaking with regard to that specific piece of mail. *See* § II.B., below. The Court should avoid premature entanglement in this abstract dispute. *Nat'l Park Hospitality Ass'n v. Dep't of Interior*, 538 U.S. 803, 807 (2003).

These jurisdictional defects—standing and ripeness—compel dismissal of Claim 2.

**B.      Guzman pleads no First Amendment violation.**

Even if the Court had subject-matter jurisdiction, Guzman fails to state a claim.

For Guzman's claim to survive a motion to dismiss, he must account for the "core holding" of *Turner*, by alleging facts showing "that there is no legitimate, rational basis" for the challenged action. *Al-Owhali v. Holder*, 687 F.3d 1236, 1239, 1241 (10th Cir. 2012); *Turner v. Safley*, 482 U.S. 78, 89 (1987) (when regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests"); *Overton v. Bazzetta*, 539 U.S. 126, 132 (2003) (inmate bears burden to disprove validity of prison restrictions). And because "[g]overnment conduct that would be unacceptable, even outrageous, in another setting may be acceptable, even necessary, in a prison," *Gee*, 627 F.3d at 1185, Guzman also must allege specific facts showing that the anticipated, "usual justifications" for decisions about his mail do not apply—facts "'that might well be unnecessary in other contexts' to surmount a motion to dismiss." *Al-Owhali*, 687 F.3d at 1240. Guzman's claim does not satisfy these pleading standards.

<u>First</u>, the claim hinges on a conclusory allegation that is not entitled to the presumption of truth. Guzman contends that, because it allegedly took ten months for his October 2019 letter to arrive at its destination, Defendants must have been "holding" it. Compl. ¶ 127. He pleads no facts to support this conjecture, which the Supreme Court has made clear should not be taken as true. *Iqbal*, 556 U.S. at 678. Not only is the allegation conclusory, the alleged delay is readily explained as a simple mishap that could easily befall international mail once it hits the post office. *Id.* at 680 (conduct compatible with lawful behavior does not plausibly suggest entitlement to relief). The flaw in Guzman's pleading is that he alleges no facts that would more plausibly connect the alleged delay to the actions of any Department of Justice official than to the conduct of one of the many persons who handled his international letter en route to its destination. Put simply, Guzman's claim

fails because he has alleged nothing more than the "mere possibility of misconduct" by any official. *Id.* at 679. That is not enough to state a claim.

Second, courts repeatedly have held that a single instance of interference with an inmate's mail does not violate the First Amendment. *Smith v. Maschner*, 899 F.2d 940, 943-44 (10th 1990) (no First Amendment violation where prison officials opened one piece of legal mail).[11]

Third, even crediting Guzman's allegation, he has not alleged that any official acted irrationally in retaining one piece of mail for a longer period of review time. He has not pleaded that, on this one occasion, the officials lacked a legitimate rational reason to take extra time to evaluate current threats and to consider whether that particular letter could safely be released to Guzman's family. After all, Guzman's sister is not just his sibling; she is the aunt of the "Chapitos." There is ample information justifying the Attorney General's conclusion that no statement by Guzman can ever be taken as benign, and that each must be reviewed with exacting scrutiny to fully assess its potential impact on Guzman's network of co-conspirators and "sicarios" (hitmen). Ex. 1 at 2-3; *see also Salim v. Sessions*, No. 13-cv-03175-RM-CBS, 2017 WL 11487131, at *5 n.7 (D. Colo. May 2, 2017) (rejecting mail-delay claim where "[t]he penological interest implicated by Plaintiff's SAMs is obvious" and "the alleged delays are isolated").[12]

---

[11] *Accord, e.g.*, *Johnson v. Wilkinson*, No. 98-3866, 2000 WL 1175519, at *2 (6th Cir. 2000) ("random and isolated inference with [inmate's] mail" not First Amendment violation); *Davis v. Goord*, 320 F.3d 346, 351 (2d Cir. 2003) ("isolated incident of mail tampering is usually insufficient to establish a constitutional violation"); *Ajaj v. Fed. Bureau of Prisons*, 2011 WL 902440, at *14 (D. Colo. Mar. 10, 2011) (claim failed where inmate failed to allege specific facts showing that defendants acted "intentionally and deliberately" or exhibited a "pattern or practice" of interfering with mail), *aff'd*, 561 F. App'x 657 (10th Cir. 2014).

[12] Guzman also has not alleged the 60-business-day review period bears no rational connection to the government's legitimate penological interest in carefully examining the mail of an inmate who has managed the Sinaloa Cartel and orchestrated murders and escapes from maximum-security prisons. Nor has he alleged that shorter timeframes would allow sufficient time to "ensure that dangerous communications are not missed." *Ayyad v. Holder*, No. 05-cv-02342-WYD-MJW, 2014 WL 4747451, at *27 (D. Colo. Sept. 24, 2014) (rejecting claim challenging SAMs timeframes, and finding that inmates failed to show government's justifications were irrational under *Turner*).

The *Turner* test is satisfied if the officials, in their judgment, believed their decision advanced the goal of defusing Guzman's risks. *Johnson v. California*, 543 U.S. 499, 513 (2005) (*Turner* does not require proof that policy or rule advances the stated goal, but only that officials "might reasonably have thought" it would advance the goal); *Sperry v. Werholtz,* 413 F. App'x 31, 40 (10th Cir. 2011) (same). Courts must accord deference to the predictive judgment of these officials, who bear responsibility for attempting to prevent Guzman from continuing to wreak destruction outside the prison. *Holder v. Humanitarian Law Project*, 561 U.S. 1, 33-36 (2010) (national-security judgments of Executive, which "must often be based on informed judgment rather than concrete evidence," entitled to deference); *accord Dep't of Navy v. Egan*, 484 U.S. 518, 529 (1988) (not possible for "nonexpert body to review the substance of such a judgment"). In this context, Guzman has not alleged the absence of any rational reason for a supposed decision to hold one letter for an extended period of review. Claim 2 should not proceed for numerous reasons.

## III.     The claim asserting deliberate indifference to medical needs fails (Claim 3).

Guzman claims an Eighth Amendment violation because (1) he has "untreated nail fungus," and because (2) he does not receive a "weekly visit from the Spanish speaking mental health professional" at ADX. Compl. ¶¶ 136, 139. The claim fails because his allegations indicate, at most, that he disagrees with the judgment of ADX medical providers.

### A.     Legal standard for a deliberate indifference claim.

"Deliberate indifference" involves "a two-pronged inquiry, comprised of an objective component and a subjective component." *Self v. Crum*, 439 F.3d 1227, 1231 (10th Cir. 2006) (discussing *Farmer*). The objective component requires a "sufficiently serious" medical need, meaning "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention."

*Prince v. Sheriff of Carter Cnty.*, 28 F.4th 1033, 1044 (10th Cir. 2022).

The subjective prong examines the defendant's state of mind, asking whether an "official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. *Farmer*, 511 U.S. at 837. Guzman must allege that a specific official possessed a mental state that was criminally culpable, "akin to 'recklessness in the criminal law.'" *Self*, 439 F.3d at 1231. And some specific official must actually have perceived the risk and deliberately ignored it. *Farmer*, 511 U.S. at 837-38. "The defendant's belief that his conduct poses no risk of serious harm (or an insubstantial risk of serious harm) need not be sound so long as it is sincere." *Salahuddin v. Goord*, 467 F.3d 263, 281 (2d Cir. 2006).

Guzman's decision not to sue individual prison officials for damages does not absolve him of the need to plead that a particular official possessed a culpable state of mind. There is "no authority holding that *an institution* can have a subjective state of mind, or that the subjective state of mind can be based on *the collective knowledge of its employees*." *Nellson v. U.S. Fed. Bureau of Prisons*, No. 21-cv-0932-WJM-STV, 2021 WL 2633402, at *6 n.5 (D. Colo. June 25, 2021) (rejecting attempt to "attribute[] deliberate indifference to BOP *writ large*").

### B.   Guzman has not alleged deliberate indifference to a serious medical need.

Guzman fails to allege the objective or subjective prongs on either component of his claim.

***Guzman's toenail.*** Guzman conjectures that fungus in his "right toenail" was caused by nail clippers that were not disinfected. Compl. ¶ 72. He does not allege that he requested medical care for this issue; instead, his attorney complained to Mr. Holbrooks, a counselor in H Unit, who passed the message to the ADX medical department. *Id.* ¶ 73. Guzman wants medication, which he thinks he needs because someday he might "contract[] a serious infection from untreated nail

fungus," *id.* ¶ 136, though he doesn't claim to have an infection now.

The minor medical complaint of common toenail fungus, or onychomycosis, does not meet the objective prong, as many courts, including this one, have found. *Aragon v. Baroni*, No. 13-cv-2772-RBJ-BNB, 2014 WL 3562998, *9 (D. Colo. July 18, 2014) (fingernail fungus "does not meet the Eighth Amendment's objective component"); *see also*, *e.g.*, *Serna v. Laursen*, 19-CV-214 MV-GBW, 2020 WL 1324072, at *4 (D.N.M. Mar. 20, 2020) ("Most courts have held that nail fungus does not constitute a serious medical need.") (collecting cases)). As in these failed claims, Guzman has not alleged that any physician has diagnosed his nail fungus as "mandating treatment," or that an average lay person would "easily recognize" this common problem as something that would require a physician's attention. *Prince*, 28 F.4th at 1044.

Neither does Guzman's mere speculation about a risk of future infection, Compl. ¶ 136, get him over the objective hurdle. A risk must be "*sure or very likely* to cause serious illness and needless suffering the next week or month or year" to invoke the Eighth Amendment. *Helling v. McKinney*, 509 U.S. 25, 32-33 (1993); *Brewer v. Landrigan*, 562 U.S. 996, 996 (2010) (same). Guzman has not alleged that he faces a certain risk, nor does the wholly conjectural (if not improbable) risk he posits amount to a "sufficiently serious" medical need—in contrast with the kind of future risks that have been found to implicate the Eighth Amendment. *See*, *e.g.*, *Benefield v. McDowall*, 241 F.3d 1267, 1272 (10th Cir. 2001) (labeling inmate a "snitch" and conspiring to have him attacked or killed); *Farrell v. J.E. Hamilton Correctional Ctr.*, 12 F. App'x 788, 790 (10th Cir. 2001) (inmate assigned to top bunk and placed on heavy work detail despite doctor's note indicating need for permanent bottom-bunk placement because of hip problems).

It is equally clear that Guzman's pleading fails the subjective prong. He has not alleged that any specific official—deliberate indifference cannot be attributed "to BOP *writ large*," *Nellson*,

2021 WL 2633402, at *6 n.5—was aware of facts plausibly indicating that an irritation as benign as common toenail fungus put him at substantial risk serious harm, much less that any official drew that inference. And not giving Guzman a prescription medication for toenail fungus hardly rises to the level of criminal recklessness, particularly where Guzman can purchase an over-the-counter remedy. *See* 5/6/2022 Commissary List, Ex. 4 at 2 (tolnaftate cream available for purchase).[13]

Guzman's preference to be treated with a prescription medication does not elevate his claim to the plausible. The Tenth Circuit has long recognized that an inmate's disagreement with medical professionals does not demonstrate a constitutional violation. *Perkins v. Kansas Dep't of Corrs.*, 165 F.3d 803, 811 (10th Cir. 1993). Even if not prescribing Guzman an oral medication for nail fungus ultimately proved to be an error in medical judgment—or so grossly negligent as to constitute medical malpractice—that medical judgment "is not subject to second-guessing in the guise of an Eighth Amendment claim." *Mata v. Saiz*, 427 F.3d 745, 751 (10th Cir. 2005)

No inference of cruel and unusual punishment can be drawn from Guzman's nail fungus.

***Demand for additional in-person meetings with a mental health provider.*** Guzman's pleading is equally deficient on the subcomponent of Claim 3 seeking more personal interaction with a Spanish-speaking mental health provider.

Here, too, Guzman has failed to allege an objective deprivation of constitutional magnitude. He admits that he sees a Spanish-speaking mental health professional every four to five weeks, but in his judgment that is not "adequate" and he ought to be seen every single week, now and into the indefinite future. Compl. ¶¶ 105 & p. 38. But *his* judgment about the matter evinces no serious medical need for weekly in-person visits with an ADX psychologist. Guzman allegedly is

---

[13] Guzman incorporated the list into his pleading. Compl. ¶ 74; *Gee*, 627 F.3d at 1185.

"experiencing" depression, *id.* ¶ 104, but he does *not* assert that a physician has actually diagnosed him with depression or any other mental disorder—let alone one for which weekly in-person therapy is the mandatory treatment. Neither has he alleged that without weekly visits, and with his current monthly regimen, he is "*sure or very likely* to" experience serious illness in the future. *Helling*, 509 U.S. at 33. Far from it. With consistent in-person attention from a mental health professional, the more plausible inference is that any deterioration in his mental health will be perceived and attended to at the appropriate time.

Neither do Guzman's allegations plausibly show that any specific official disregarded a known, substantial risk of harm with criminally reckless intent. Rather, they demonstrate that he receives a consistent, measured course of treatment. He prefers more face-time with his psychologist (who must care for hundreds of other inmates, too) but medical providers "do not act with deliberate indifference when they provide medical treatment even if it is subpar or different from what the inmate wants." *Lamb v. Norwood*, 899 F.3d 1159, 1162 (10th Cir. 2018). A court does not sit as "a medical review board." *Sherman v. Klenke*, 653 F. App'x 580, 588 (10th Cir. 2016); *see also DesRosiers v. Moran*, 949 F.2d 15, 19 (1st Cir. 1991) (in evaluating "the care in an institutional setting, courts must fairly weigh the practical constraints facing prison officials"). Where, as with Guzman's mental health treatment, "'the dispute concerns not the absence of help, but the choice of a certain course of treatment, or evidences mere disagreement with considered medical judgment, we will not second guess the doctors.'" *Sherman*, 653 F. App'x at 588. The Supreme Court held decades ago that "the question whether … additional diagnostic techniques or forms of treatment [are] indicated is a classic example of a matter for medical judgment" that does not give rise to an Eighth Amendment claim. *Estelle v. Gamble*, 429 U.S. 97, 107 (1976).

In sum, Guzman has not plausibly alleged that, in a context where he receives consistent,

individualized mental health care, any official has perceived and ignored, with criminally reckless intent, a substantial risk of serious harm to him. This is a classic case of an inmate's disagreement with a course of care, and like the many cases based on the same theory, warrants dismissal.

## IV.     The First Amendment petition claim fails (Claim 4).

In this claim, Guzman seeks to extricate himself from the mandate under the Prison Litigation Reform Act to exhaust his claims before raising them in federal court. He asserts that "the exhaustion requirement [is] inapplicable" to him because a former ADX Warden allegedly didn't respond to a letter from Guzman's attorney, and that this somehow demonstrates an "abdicat[ion]" of Defendants' duties. Compl. ¶¶ 149-151. Guzman states no claim for relief.

A letter from an attorney is not even part of the prison administrative-remedy process. No court has ever held that a government official has a First Amendment obligation to respond to letters from the public. The First Amendment provides that "Congress shall make no law … abridging the freedom of speech." It contains no affirmative obligation requiring government response to letters. Moreover, even if this was part of the prison grievance process, there still is no constitutional right at issue. *See, e.g.*, *Green v. Corr. Corp. of Am.*, 401 F. App'x 371, 375 n.4 (10th Cir. 2010) (no constitutional right to use the prison grievance procedure); *Boyd v. Werholtz*, 443 F. App'x 331, 332 (10th Cir. 2011) (same); *Soboroff v. Doe*, 569 F. App'x 606, 610 (10th Cir. 2014) ("BOP grievance process is not a constitutional right"). The claim fails as a matter of law.

The closest that such a claim can get to a First Amendment violation is under the rubric of a denial-of-access-to-the-courts claim. *Green v. Snyder*, No. 10-cv-02669-WYD-MEH, 2012 WL 3261410, at *7 (D. Colo. May 17, 2012) (analyzing inmate's allegation that "deliberate mishandling of grievances violated [his] First Amendment right to petition the government for redress of grievances" as a claim for denial of access to courts), *adopted*, 2012 WL 3245409 (D.

Colo. Aug. 8, 2012), *aff'd*, 525 F. App'x 726 (10th Cir. 2013). Guzman falls short of meeting the exacting standards to plead such claim, which require that he allege that he sustained an actual injury to his ability to pursue litigation. *Lewis v. Casey*, 518 U.S. 343, 349, 351 (1996). The well-pleaded facts must support a plausible inference that Guzman was either (1) frustrated in his ability to "prepar[e] and fil[e]" suit at the present time, or (2) prevented from achieving a now-unobtainable result in past litigation. *Christopher v. Harbury*, 536 U.S. 403, 413-14 (2002). For either prong, Guzman must identify a "nonfrivolous, arguable underlying claim." *Id.* at 414 (quoting *Lewis*, 518 U.S. at 353). Guzman's pleading is insufficient.

As for prong one, because Guzman is actively pursuing his claims in this case, with the assistance of two attorneys, he has not alleged that he has been frustrated in his ability to prepare and file suit at the present time. *Walker v. Hickenlooper*, 627 F. App'x 710, 719 (10th Cir. 2015). Guzman's pleading similarly fails prong two of the access-to-courts test. He alleges no facts demonstrating the existence of any past litigation in which he has been compelled to forego some now-unobtainable result. Indeed, Guzman's only "past" litigation appears to be the appeal in his criminal case, in which counsel continued to litigate vigorously on his behalf, including filing a petition for writ of certiorari. Docket, *United States v. Guzman Loera*, No. 19-2239 (2d Cir.), available on PACER, https://ecf.ca2.uscourts.gov/n/beam/servlet/TransportRoommade (36 filings made on Guzman's behalf since July 22, 2019).

At bottom, Guzman alleges that his attorney wrote a letter and did not receive a response. That is not a constitutional violation. Claim 4 cannot proceed.

## V.   The Administrative Procedure Act claim fails (Claim 5).

Guzman purports to challenge his ADX conditions—specifically, the alleged Eighth Amendment violations based on his access to outdoor exercise and medical care that are the

subject of Claims 1 and 3—under the Administrative Procedure Act. Compl. ¶ 155. Jurisdiction is lacking because the APA does not waive sovereign immunity for this claim.

### A.     Guzman fails to identify an agency action.

The APA waives sovereign immunity for certain non-monetary claims against the federal government: "A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof." 5 U.S.C. § 702. To satisfy § 702, Guzman first must "identif[y] some 'agency action' affecting him in a specific way." *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 882 (1990)). An "agency action" is limited to the set of "circumscribed, discrete agency actions" set forth in 5 U.S.C. § 551(13), which defines "agency action" as "an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act." *See Norton v. S. Utah Wilderness Alliance*, 542 U.S. 55, 62 (2004); *see also Colo. Farm Bureau Fed'n v. U.S. Forest Serv.*, 220 F.3d 1171, 1173 (10th Cir. 2000) (plaintiff has "the burden of identifying specific federal conduct and explaining how it is 'final agency action' with the meaning of section 551(13)")). Because Guzman points to no "rule, order, license, sanction, relief or the equivalent or denial thereof" as the basis for waiver of sovereign immunity, his allegations must fall under the "failure to act" category of § 551(13). While Guzman references 5 U.S.C. § 706(2), Compl. ¶ 154, he clearly seeks to compel BOP to take action that has been withheld. *Id.* ¶ 155 (alleging failure to provide exercise and mental health care); *see also id.* at 38.

Section 706(1) of the APA provides the avenue for judicial review of "unlawfully withheld or unreasonably delayed" agency action. *Norton*, 542 U.S. at 62. The Supreme Court held that "failure to act" is "properly understood as a … failure to take one of the agency actions (including their equivalents) earlier defined in §551(13)." *Id.* That is, a "failure to act" is not a denial but is

limited … to a discrete action." *Id.* at 63. Further, any compelled action must be "legally required." *Id.* Thus, § 706(1) empowers a court only to compel an agency 'to perform a ministerial or non-discretionary act,' or 'to take action upon a matter, without directing how it shall act.'" *Id.* at 64. Put another way, a court may only compel an agency "to take a discrete agency action that it is required to take." *Id.* at 63-64; *see also Benzman v. Whitman*, 523 F.3d 119, 133 (2d Cir. 2008) (because claim under § 706(1) is in the nature of mandamus, plaintiff must demonstrate "a clear right to the relief sought" and that "the Government has a plainly defined and peremptory duty to perform the act in question"); *Mt. Emmons Mining Co. v. Babbitt*, 117 F.3d 1167, 1170 (10th Cir. 1997) (injunction under § 706(1) is "essentially in the nature of mandamus relief").

Here, Guzman's allegations about outdoor exercise and mental health care do not amount to "a failure to take one of the agency actions (including their equivalents) earlier defined in § 551(13)." *See Norton*, 542 U.S. at 62. He has not alleged that there is any "rule, order, license, sanction, relief or the equivalent or denial thereof" that *requires* BOP to give him more outdoor exercise time or that *requires* BOP to deliver a Spanish-speaking mental health professional to his cell every week. And without identifying any discrete action that BOP was required to do, Guzman has failed to identify a reviewable agency action under the APA.

Put simply, Guzman has not identified any "'agency action' on which a waiver of sovereign immunity under the APA can be based." *See Glenewinkel v. Carvajal*, No. 3:20-CV-2256-B, 2022 WL 179599, at *4 (N.D. Tex. Jan. 20, 2022) (finding that BOP's alleged failure to provide certain conditions of confinement were not "agency actions" for purposes of §§ 551 and 702). His failure to identify any agency action, let alone a final agency action,[14] dooms his claim.

_____

[14] Action cannot be "final" until administrative remedies are exhausted. *Simmat*, 413 F.3d at 1233.

**B.      Guzman fails to show that he has no other adequate remedies.**

Second, the APA limits judicial review to "final agency action for which there is no other adequate remedy in a court." 5 U.S.C. § 704. This very case shows that Guzman has at least one other adequate remedy. In Claims 1 and 3, he raises constitutional claims challenging the same conditions underlying his APA claim. Because he challenges the conduct of Defendants rather than the validity of a particular policy, these constitutional claims are the proper avenue for him to seek redress. *See*, *e.g.*, *Sabir v. Licon-Vitale*, No. 3:20-CV-01552, 2022 WL 1291731, at *5 (D. Conn. Apr. 29, 2022) (where inmate "challenges the conduct of the defendants rather than the validity of a particular prison policy, his allegations are not cognizable under the APA"); *Eads v. Fed. Bureau of Prisons*, No. CV1918394NLHMJS, 2021 WL 1085459, at *4 (D.N.J. Mar. 22, 2021) (holding no APA review for medical care claims because of adequate remedies through the FTCA and constitutional injunctive relief claims).

Because "[u]nder § 704, judicial review only applies when 'there is no other adequate remedy," *Arcamone-Makinano v. Haaland*, No. 22-8006, 2022 WL 1042573, at *2 (10th Cir. Apr. 7, 2022), Guzman's APA fails for this additional reason. Claim 5 cannot proceed.

**C.      In any event, an APA claim fails because it falls under the same standard.**

Where APA review is available, it provides that a court may set aside agency actions that are "contrary to constitutional right." 5 U.S.C. § 706(2)(B). For the reasons explained earlier, Guzman's constitutional claims fail for lack of jurisdiction and for failure to state a claim. So too would any APA claim based on such alleged violations, for the same reasons.

**CONCLUSION**

In conclusion, all claims in Guzman's complaint. ECF No. 1, should be dismissed.

Respectfully submitted on June 28, 2022.    COLE FINEGAN
United States Attorney

s/ *Susan Prose*
Susan Prose
Assistant United States Attorney
1801 California Street, Suite 1600
Denver, Colorado 80202
T: (303) 454-0100; F: (303) 454-0411
susan.prose@usdoj.gov

Counsel for Defendants

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**CERTIFICATE OF SERVICE (CM/ECF)**

I hereby certify that on June 28, 2022, I electronically filed the foregoing with the Clerk of Court using the ECF system, which will electronically send notice to:

Mariel A. Colon Miro
Jodi L. Morales

s/ *Susan Prose*
Susan Prose
United States Attorney's Office