**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Nina Y. Wang**

Civil Action No. 21-cv-02794-NYW-MEH

JOAQUIN A. GUZMAN LOERA,[1]

      Plaintiff,

v.

B. TRUE, individually, and in his official capacity as Complex Warden of the United States
Penitentiary Florence ADMAX,
HOLBROOKS, individually, and in his official capacity as Prisoner Counselor at United States
Penitentiary Florence ADMAX,
MERRICK GARLAND, in his official capacity as Attorney General of the United States,
MICHAEL CARVAJAL, in his official capacity as Director of Bureau of Prisons,
DOES 1–5, individually, and in their official capacities as Medical Staff at United States
Penitentiary Florence ADMAX, and
DOES 6–10, individually, and in their official capacities as Educational Staff at United States
Penitentiary Florence ADMAX,

      Defendants.

---

## ORDER ON MOTION TO DISMISS

---

This matter is before the Court on the Motion to Dismiss Pursuant to Rules 12(b)(1) and

12(b)(6) (the "Motion" or "Motion to Dismiss") [Doc. 24]. The Court has reviewed the Motion,

the related briefing, and the applicable case law, and concludes that oral argument would not

materially assist in the resolution of this matter. For the reasons set forth herein, the Motion to

Dismiss is respectfully **GRANTED in part** and **DENIED in part**.

---

[1] The Court notes that Plaintiff's surname is spelled "Guzman Lorea" in the caption of his
Complaint, *see* [Doc. 1 at 1], but is consistently spelled "Guzman Loera" elsewhere in the
Complaint. *See, e.g.*, [*id.* at ¶¶ 4, 7, 12]. The Court assumes that the spelling in the caption is the
result of a typographical error and uses the spelling most often used by Plaintiff, who proceeds
through counsel. The Clerk of Court is **DIRECTED** to update the case caption to reflect the
correct spelling of Mr. Guzman Loera's name.

**BACKGROUND**

The Court takes the following facts from the Complaint for Injunctive Relief [Doc. 1] and presumes they are true for purposes of this Order. Plaintiff Joaquin A. Guzman Loera ("Plaintiff" or "Mr. Guzman Loera") is currently incarcerated in the United States Penitentiary Administrative Maximum Facility in Florence, Colorado ("ADMAX"). [Doc. 1 at ¶ 12]. He is housed in the ADMAX Special Security Unit, also referred to as "Unit H," and is confined in a cell that is approximately seven feet by twelve feet, where he stays in complete isolation for 24 hours per day. [*Id.* at ¶ 26]. Plaintiff's cell has one window that is approximately four inches wide and 42 inches tall. [*Id.* at ¶ 27]. Plaintiff has no human contact other than when guards put on and remove his shackles, and he is not permitted to have any verbal contact or communication with other inmates. [*Id.* at ¶¶ 27–28]. Mr. Guzman Loera has been held under these conditions, pursuant to Special Administrative Measures ("SAMs"), since he arrived to the United States in 2017. [*Id.* at ¶¶ 21, 29]. Since he has been confined at ADMAX, Plaintiff has "adhered to all prison rules and regulations and has behaved in an exemplary fashion." [*Id.* at ¶ 37].

Mr. Guzman Loera raises a number of issues in the conditions of his confinement.[2] First, he states that the ADMAX handbook provides all inmates the right to a "regular exercise period." [*Id.* at ¶ 31]. According to Plaintiff, although he previously received nine to ten hours of outdoor exercise per week, since about December 2019, he has only been permitted "up to three hours" of outdoor exercise per week, and sometimes is not permitted any exercise time at all. [*Id.* at ¶ 32]. Despite repeated requests to Bureau of Prisons ("BOP") staff, nothing has been done to remedy Plaintiff's lack of exercise time. [*Id.*]. Mr. Guzman Loera alleges that his lack of outdoor or

---

[2] To adequately frame the issues before the Court, the Court addresses only the allegations that form the bases of Plaintiff's substantive claims.

exercise time, combined with his indefinite isolation, have caused anxiety, depression, insomnia, memory loss, paranoia, and high blood pressure. [*Id.* at ¶ 39].

Second, cells in ADMAX have in-cell televisions. *See, e.g.*, [*id.* at ¶¶ 47–48]. One television channel operates as a "bulletin board" and provides facility information to inmates. [*Id.* at ¶ 48]. In addition, ADMAX offers a variety of educational programs, including an English as a Second Language ("ESL") class, in which Mr. Guzman Loera has requested to participate. [*Id.* at ¶¶ 46, 53]. Almost all education at ADMAX is completed through self-directed study using video lessons broadcast on the in-cell televisions. [*Id.* at ¶ 47]. However, the channels are broadcast in English only, and Plaintiff does not speak or read English. [*Id.* at ¶ 48]. The materials do not have Spanish-language subtitles, which prohibits Plaintiff from reading the available educational programming and bulletin board announcements. [*Id.* at ¶¶ 48–49]. In addition, papers provided to Plaintiff from the ADMAX's Educational Department are written in English, which Plaintiff cannot read. [*Id.* at ¶ 58]. Despite repeated requests to BOP officials, nothing has been done to address these barriers to access. [*Id.* at ¶¶ 50, 59].

Third, Plaintiff must wait an "unconscionable" period of time, up to several months, to receive letters from his family and for his family to receive letters written by him. [*Id.* at ¶¶ 67–68]. Due to a lack of access to email and severely restricted access to telephone calls, Mr. Guzman Loera relies on mail correspondence to communicate with his family. [*Id.* at ¶ 66]. On one occasion, Mr. Guzman Loera mailed letters to his sister and daughters in October of 2019, but his family members did not receive the letters until August of 2020. [*Id.* at ¶ 68]. Mr. Guzman Loera alleges that he has "mailed other letters to his daughters and sister since, which also took months [for his family members] to receive." [*Id.*].

Fourth, inmates at ADMAX must share nail clippers, which are apparently not disinfected between uses. [*Id.* at ¶ 72]. This caused Plaintiff to develop a fungus in his toenail and thumb. [*Id.*]. To date, Mr. Guzman Loera has not received medical treatment for his nail fungus. [*Id.* at ¶ 74]. Fifth, Plaintiff has complained on multiple occasions that he is "woken up every single night after midnight by a sudden extreme hot air flow that blows for roughly 15 minutes four to five times a night," causing Plaintiff to suffer from "severe sleep deprivation." [*Id.* at ¶¶ 75–76]. Plaintiff alleges that the lack of sleep has caused high blood pressure, depression, and memory loss, and describes these conditions as "both physical and mental torture." [*Id.*].

Sixth, although ADMAX offers limited individual therapy, Mr. Guzman Loera has had to wait up to five weeks to speak to someone in the mental health department and has no access to group therapy. [*Id.* at ¶ 77]. Specifically, someone from the mental health department at ADMAX performs weekly rounds to each inmate to check on them; however, this individual only speaks English and is unable to communicate with Plaintiff. [*Id.* at ¶ 105]. A Spanish-speaking individual from the mental health department "stops by Plaintiff's cell once every four to five weeks, instead of once a week." [*Id.*]. Plaintiff has submitted requests for regular visits by a psychiatrist or other mental health professional to "BOP staff at ADMAX," but Plaintiff's requests have been ignored. [*Id.* at ¶ 78].

And finally, seventh, Plaintiff alleges that he attempted to file grievance forms to address "some of the issues" raised in his Complaint. [*Id.* at ¶ 81]. When he received the forms back, "something [was] written on them in English," but Plaintiff did not receive a Spanish translation for the written words. [*Id.* at ¶ 85]. These answers turned out to be rejection notices, but because Plaintiff had no translation of the forms, the deadline to file an appeal or amend the grievance forms lapsed, and "Plaintiff – at no fault of his own – was not able to complete the grievance

4

process." [*Id.* at ¶ 87].  Plaintiff alleges that his counsel contacted Defendant Holbrooks and ADMAX's general counsel on a number of occasions to try to get copies of the forms, and Defendant Holbrooks eventually informed Plaintiff's counsel that he could not email the requested materials, but that counsel could obtain them by filing a FOIA request or by having Plaintiff mail them directly to counsel.  [*Id.* at ¶¶ 88–91].

Mr. Guzman Loera initiated this civil action on October 18, 2021, naming four Defendants: B. True, the Warden of ADMAX; Holbrooks, the prisoner counselor at ADMAX; Merrick Garland, the Attorney General of the United States; and Michael Carvajal, the Director of the BOP. [*Id.* at ¶¶ 13–16].  The Complaint also names ten Doe Defendants: five who are on staff in the medical department at ADMAX and five who are on staff in the education department at ADMAX. [*Id.* at ¶¶ 17–18].  Mr. Guzman Loera asserts five claims, each raised against all ten Defendants: (1) an Eighth Amendment conditions-of-confinement claim based on (a) the denial of access to exercise, (b) the denial of access to educational opportunities, and (c) the conditions causing Plaintiff to suffer sleep deprivation ("Claim One"); (2) a First Amendment claim based on Mr. Guzman Loera's inability to send and receive letters ("Claim Two"); (3) an Eighth Amendment medical deliberate indifference claim based on the deprivation of medical care ("Claim Three"); (4) a First Amendment claim based on Plaintiff's right to petition the government for redress of grievances ("Claim Four"); and (5) a claim under the Administrative Procedure Act, 5 U.S.C. § 702 *et seq.*, based on Defendants' failure to explain why Plaintiff has not received medical treatment for his nail fungus or weekly visits with a mental health professional ("Claim Five"). [*Id.* at ¶¶ 110–157].  Plaintiff requests only injunctive relief in his Complaint.  [*Id.* at 37–38].

On June 28, 2022, the named Defendants[3] filed the instant Motion to Dismiss. [Doc. 24]. Therein, they argue that Plaintiff's claims should be dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) and for failure to state a claim under Rule 12(b)(6). *See generally* [*id.*]. Mr. Guzman Loera responded in opposition on July 14, 2022, [Doc. 28], and Defendants filed their Reply on July 28, 2022. [Doc. 29]. The Motion to Dismiss is thus ripe for resolution.

## LEGAL STANDARDS

### I.      Rule 12(b)(1)

Federal courts are courts of limited jurisdiction. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). As such, courts "are duty bound to examine facts and law in every lawsuit before them to ensure that they possess subject matter jurisdiction." *Wilderness Soc. v. Kane Cnty.*, 632 F.3d 1162, 1179 n.3 (10th Cir. 2011) (Gorsuch, J., concurring). The party invoking federal jurisdiction has the burden of establishing the Court's jurisdiction. *Merida Delgado v. Gonzales*, 428 F.3d 916, 919 (10th Cir. 2005).

Rule 12(b)(1) permits courts to dismiss a complaint for a lack of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). Attacks on subject matter jurisdiction may take two different forms—a facial attack or a factual attack—which implicate different analytical frameworks. The Tenth Circuit has explained that

> [m]otions to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) may take one of two forms. First, a party may make a facial challenge to the plaintiff's allegations concerning subject matter jurisdiction, thereby questioning the sufficiency of the complaint. In addressing a facial attack, the district court must accept the allegations in the complaint as true. Second, a party may go beyond allegations contained in the complaint and challenge the facts upon which subject

---

[3] Throughout this Order, the Court's references to "Defendants" comprises only the named Defendants: B. True, Holbrooks, Merrick Garland, and Michael Carvajal, and only insofar as they are sued in their official capacities. Defense counsel states that she represents Defendants in their official capacities only, *see* [Doc. 24 at 3 n.4], and as discussed in detail below, Defendants have not been served individually in this matter.

matter jurisdiction depends.  In addressing a factual attack, the court does not presume the truthfulness of the complaint's factual allegations, but has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts under Rule 12(b)(1).

*United States v. Rodriquez Aguirre*, 264 F.3d 1195, 1203 (10th Cir. 2001) (quotation omitted)).

The issue before the Court "is not whether plaintiff will ultimately succeed on the merits," *Kenney v. Helix TCS, Inc.*, 284 F. Supp. 3d 1186, 1188 (D. Colo. 2018), *aff'd*, 939 F.3d 1106 (10th Cir. 2019), but whether the Court lacks authority to adjudicate the matter.  *Glapion v. Castro*, 79 F. Supp. 3d 1207, 1212 (D. Colo. 2015).

## II.     Rule 12(b)(6)

Under Rule 12(b)(6), a court may dismiss a complaint for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  In deciding a motion under Rule 12(b)(6), the Court must "accept as true all well-pleaded factual allegations . . . and view these allegations in the light most favorable to the plaintiff."  *Casanova v. Ulibarri*, 595 F.3d 1120, 1124 (10th Cir. 2010) (quoting *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009)).  Nevertheless, a plaintiff may not rely on mere labels or conclusions, "and a formulaic recitation of the elements of a cause of action will not do."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  Rather, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (explaining that plausibility refers "to the scope of the allegations in a complaint," and that the allegations must be sufficient to nudge a plaintiff's claim(s) "across the line from conceivable to plausible").  The ultimate duty of the Court is to "determine whether the complaint sufficiently alleges facts supporting all the elements necessary to establish an entitlement to relief under the legal theory proposed."  *Forest Guardians v. Forsgren*, 478 F.3d 1149, 1160 (10th Cir. 2007).

## ANALYSIS

Defendants raise a number of arguments in their Motion to Dismiss.  They assert that Claim Two should be dismissed for lack of subject matter jurisdiction on the basis that Plaintiff lacks standing to assert this claim and because the claim is not ripe.  [Doc. 24 at 6–9].  Next, they argue that Plaintiff fails to state a claim under Rule 12(b)(6) with respect to any of his five claims.  [*Id.* at 3–6, 9–20].  Mr. Guzman Loera disagrees.  He maintains generally that his claims are sufficient to meet the requirements of Rule 12(b)(6), but offers little substantive argument with respect to any of his specific claims or his allegations.  *See* [Doc. 28 at 2–8].

### I.    Subject Matter Jurisdiction

Because subject matter jurisdiction is a threshold issue, the Court first addresses Defendants' argument that Claim Two—Plaintiff's First Amendment claim arising out of alleged interference with his mail—must be dismissed for lack of standing.  *See* [Doc. 24 at 7]; *see also United States v. Springer*, 875 F.3d 968, 973 (10th Cir. 2017) ("Jurisdiction is a threshold question that a federal court must address before reaching the merits." (quotation omitted)); *Citizen Ctr. v. Gessler*, 770 F.3d 900, 906 (10th Cir. 2014) (standing is jurisdictional).

Defendants contend that Plaintiff lacks standing to assert Claim Two because he has not alleged a concrete, actual or imminent injury that can be redressed by a favorable court ruling.  [Doc. 24 at 7].  More specifically, Defendants note that because the allegedly delayed letter from Plaintiff's family has been delivered to Plaintiff, Plaintiff "seeks no relief related to that letter" and instead seeks "a forward-looking injunction regarding the handling of potential future letters." [*Id.*]; *see also* [Doc. 1 at 38 (Plaintiff seeking a court order "[d]irecting Defendants to process Plaintiff's mail within seven days of Plaintiff's submitting mail for processing and providing Plaintiff received mail within seven days of receiving the mail at ADMAX")].  Defendants contend

that Plaintiff must establish a certainly impending threatened injury to demonstrate an entitlement to such relief and argue that Plaintiff's allegations about a single letter that was delayed are insufficient to meet that threshold.  [Doc. 24 at 7].[4]  Mr. Guzman Loera does not respond to this argument.  *See generally* [Doc. 28].

A plaintiff must establish Article III standing, or constitutional standing, to bring each of his claims separately.  *See DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006).  Article III standing requires "(1) an 'injury in fact,' (2) sufficient 'causal connection between the injury and the conduct complained of,' and (3) a 'likel[ihood]' that the injury 'will be redressed by a favorable decision.'"  *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 157–58 (2014) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992) (alterations in original)).  The injury-in-fact requirement "helps to ensure that the plaintiff has a 'personal stake in the outcome of the controversy.'"  *Susan B. Anthony List*, 573 U.S. at 158 (quoting *Warth v. Seldin*, 422 U.S. 490, 498 (1975)).  An injury in fact must be "concrete and particularized" and "actual or imminent, not conjectural or hypothetical."  *S. Utah Wilderness All. v. Palma*, 707 F.3d 1143, 1153 (10th Cir. 2013).  "An allegation of future injury may suffice if the threatened injury is certainly impending, or there is a substantial risk that the harm will occur."  *Susan B. Anthony List*, 573 U.S. at 158 (quotations omitted).  "The party invoking federal jurisdiction bears the burden of establishing" the elements of standing.  *Lujan*, 504 U.S. at 561.

---

[4] Defendants also assert that since July 2019, when Mr. Guzman Loera arrived at ADMAX, there has been a "record of consistent compliance with SAMS mail-review procedures [that] precludes [Plaintiff] from showing that he faces a certainly impending future injury."  [Doc. 24 at 7–8].  In support, Defendants rely on materials outside of the pleadings.  *See* [Doc. 24-3].  Defendants do not argue that their challenge to the Court's subject matter jurisdiction is a facial attack, which would permit the Court to consider these extraneous materials.  *See generally* [Doc. 24].  In any event, the Court concludes that it can rule on this issue without considering materials outside of the pleadings.

With respect to Claim Two, Plaintiff alleges that he "must wait an unconscionable amount of time to receive" letters from his family and for his letters to arrive to his family. [Doc. 1 at ¶ 67]. He provides one specific example: "Plaintiff mailed his first letters to his sister and twin daughters in October of 2019, and they finally received these letters in August of 2020 – 10 months later." [*Id.* at ¶ 68]. He further alleges that he "has mailed other letters to his daughters and sister since, which also took months [for his family] to receive." [*Id.*]. He asserts that his "right to 'correspond with family members' is being violated by [D]efendants and their agents," [*id.* at ¶ 70], and seeks a court order directing Defendants to process his mail within seven days of receipt. [*Id.* at 38].

The Court respectfully agrees with Defendants that Plaintiff has not alleged facts establishing a threatened injury that is certainly impending. Plaintiff's Complaint lacks the basic necessities to sufficiently establish standing based on a future injury to his ability to send and receive mail. Most significantly, he does not allege that he has "concrete plans" to send letters in the future. *Baker v. USD 229 Blue Valley*, 979 F.3d 866, 875 (10th Cir. 2020). While Plaintiff may think such intentions go without saying, the Court cannot simply "supply additional factual allegations to round out [Plaintiff's] complaint." *Whitney v. State of N.M.*, 113 F.3d 1170, 1175 (10th Cir. 1997). Nor does Plaintiff allege that Defendants will, in the future, delay or interfere with his mail, and the Court cannot simply assume that they will do so. *See generally* [Doc. 1]; *compare Clark v. City of Williamsburg*, 388 F. Supp. 3d 1346, 1356 (D. Kan. 2019), *aff'd*, 844 F. App'x 4 (10th Cir. 2021) (concluding that the plaintiff had standing based on threat of future injury when he alleged that he had been threatened with enforcement of a challenged ordinance). Further, while Plaintiff cursorily alleges that his right to correspond with his family "*is* being violated," he fails to present any facts in support of this claim; instead, he provides one concrete example of a

delay that occurred over a year before he filed his Complaint.  *See* [Doc. 1 at ¶ 68].  And insofar as Plaintiff states that he "has mailed other letters to his daughters and sister since, which also took months [for them] to receive," [*id.*], Plaintiff does not identify any specific, actionable harm *to Plaintiff* that came from the delay in *his family members* receiving his letters.  A particularized injury "must affect the plaintiff in a personal and individual way."  *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016).  And finally, Plaintiff raises no argument in his Response explaining the basis for his standing.  *See* [Doc. 28].  Plaintiff has not met his burden of establishing his standing to bring, or the Court's subject matter jurisdiction over, Claim Two.  *Lujan*, 504 U.S. at 561.

Because Plaintiff lacks standing to bring Claim Two, the Motion to Dismiss is **GRANTED** with respect to this claim.  Claim Two is **DISMISSED without prejudice**.

## II.   The Eighth Amendment

The Eighth Amendment protects against the government's infliction of cruel and unusual punishment.  U.S. Const. amend. VIII.  Among other things, the Eighth Amendment guarantees that inmates "receive adequate food, clothing, shelter, and medical care" and are safe in their confinement.  *Farmer v. Brennan*, 511 U.S. 825, 832 (1994).  Mr. Guzman Loera alleges that all Defendants have violated the Eighth Amendment in two respects: first, by subjecting him to unconstitutional conditions of confinement, and second, by being deliberately indifferent to his serious medical needs.  [Doc. 1 at ¶¶ 110–23, 131–46].

### A.   Unconstitutional Conditions of Confinement

The Eighth Amendment's proscription on cruel and unusual punishment extends to the conditions under which an inmate is confined.  *See Helling v. McKinney*, 509 U.S. 25, 31 (1993) ("[T]he treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment.").  The Eighth Amendment requires that prison

officials "provide humane conditions of confinement." *Requena v. Roberts*, 893 F.3d 1195, 1214 (10th Cir. 2018). "Conditions-of-confinement claims have two prongs: (1) an objective prong, under which the alleged injury must be sufficiently serious, and (2) a subjective prong, under which the prison official who imposed the condition must have done so with deliberate indifference." *Redmond v. Crowther*, 882 F.3d 927, 936 n.3 (10th Cir. 2018).

Defendants argue that Claim One fails to state a claim under Rule 12(b)(6) and must be dismissed. [Doc. 24 at 3]. They contend that challenges to "overall conditions" of confinement are too "amorphous" to state a claim under the Eighth Amendment unless the conditions "have a mutually enforcing effect that produces the deprivation of a single, identifiable human need such as food, warmth, or exercise." [*Id.* at 3–4 (quoting *Wilson v. Seiter*, 501 U.S. 294, 304 (1991))]. Defendants assert that Plaintiff fails to state a claim because he does not allege an unquestioned and serious deprivation of basic human needs. [*Id.* at 4]. Defendants go on to specifically challenge each of the bases for Plaintiff's Eighth Amendment claim, contending that none are sufficiently serious to meet the objective prong of the Eighth Amendment test. [*Id.* at 4–6]. Defendants do not raise any arguments with respect to the subjective prong. *See generally* [*id.*].

In his Response, Mr. Guzman Loera challenges Defendants' reliance on *Wilson*, arguing that "in a more recent decision involving prison conditions, the Supreme Court made clear that overall conditions that 'create violent, unsanitary, and chaotic conditions' may 'contribute to constitutional violations.'" [Doc. 28 at 4 (quoting *Brown v. Plata*, 563 U.S. 493, 518 (2011) (alterations omitted))]. Plaintiff contends that "[m]any of the decisions cited and quoted in the Government's motion predate *Brown* . . . and are therefore inapposite." [*Id.*]. In the alternative, Plaintiff claims that he has stated a cognizable Eighth Amendment claim "even under the Government's framework" because he has alleged specific deprivations of his human needs of

sleep, "outside communication and mail," medical care, exercise, educational programming, and his right to petition the courts. [*Id.* at 5].[5]

Contrary to Plaintiff's assertion, *Brown* does not call the holding of *Wilson* into question. *Brown* addressed the question of whether a three-judge court, convened pursuant to the Prison Litigation Reform Act ("PLRA"), violated the PLRA by ordering that California release a number of inmates to address prison overcrowding. *See Brown*, 563 U.S. at 499–502. It did not change the standards for asserting an Eighth Amendment violation. *See generally id.*[6] Post-*Brown*, numerous Circuit courts, including the Tenth Circuit, have continued to cite *Wilson* for the general

---

[5] Plaintiff states in his Response that "besides plaintiff's Eighth Amendment claims, the complaint alleges violations of the Due Process Clause of the Fifth Amendment and accuses defendants of imposing the challenged restrictions arbitrarily, while denying him access to any meaningful grievance mechanism." [Doc. 28 at 6]. The Court does not construe Plaintiff's Complaint as asserting a Fifth Amendment claim. For one, none of Plaintiff's delineated claims invoke the Fifth Amendment. *See* [Doc. 1 at 25–37]. Moreover, the Complaint does not include any substantive allegations asserting a denial of due process or the deprivation of a liberty or property interest; indeed, it states only in a conclusory fashion that Defendants' denial of access to outdoor time, education programming, and mental healthcare "violate[s] the Due Process Clause of the Fifth Amendment," [*id.* at ¶ 6], and similarly, cursorily states in a footnote that this case "involves the arbitrary deprivation of services that Plaintiff is entitled to as an inmate." [*Id.* at 9 n.1].

Rule 8 requires that a complaint contain a short and plain statement of the plaintiff's claim for relief. Fed. R. Civ. P. 8(a)(2). Courts in this Circuit have interpreted the requirements of Rule 8 to include identifying the specific legal basis for each claim. *See, e.g.*, *Wolf v. [No Defendants Named]*, No. 11-cv-02185-WYD-CBS, 2011 WL 4973667, at *3 (D. Colo. Sept. 23, 2011), *report and recommendation adopted sub nom. Wolf v. Pub. Tr. of Gilpin Cnty.*, 2011 WL 4972081 (D. Colo. Oct. 19, 2011); *see also Polovino v. Int'l Bhd. of Elec. Workers, AFL-CIO*, No. 15-cv-023-JHP-PJC, 2015 WL 4716543, at *4 (N.D. Okla. Aug. 7, 2015) ("[A] complaint must specify the legal basis for any claim."). Plaintiff is represented by counsel and is not entitled to a liberal construction of his Complaint. *Mann v. Boatright*, 477 F.3d 1140, 1148 (10th Cir. 2007). For these reasons, the Court does not construe the Complaint as asserting a Fifth Amendment claim.

[6] Plaintiff's statement that, in *Brown*, "the Supreme Court made clear that overall conditions that 'create violent unsanitary, and chaotic conditions' may 'contribute to constitutional violations,'" [Doc. 28 at 4 (quoting *Brown*, 563 U.S. at 517)], is not accurate. The statement quoted from *Brown* is taken from the Supreme Court's recitation of the three-judge court's holding: "The [panel] found that overcrowding strains inadequate medical and mental health facilities; overburdens limited clinical and custodial staff; and creates violent, unsanitary, and chaotic conditions that contribute to the constitutional violations and frustrate efforts to fashion a remedy." *Brown*, 563 U.S. at 517.

proposition that "[n]othing so amorphous as 'overall conditions' can rise to the level of cruel and unusual punishment when no specific deprivation of a single human need exists." *See, e.g., Gowadia v. Stearns*, 596 F. App'x 667, 674 (10th Cir. 2014); *Saunders v. Sheriff of Brevard Cnty.*, 735 F. App'x 559, 571 (11th Cir. 2018); *Dockery v. Cain*, 7 F.4th 375, 378 (5th Cir. 2021); *Johnson v. Prentice*, 29 F.4th 895, 904 (7th Cir. 2022). Accordingly, the Court concludes that *Wilson* still provides the guiding standard for Eighth Amendment claims.

To state a conditions-of-confinement claim under the Eighth Amendment, a challenge to the "overall conditions" of an inmate's conditions of confinement does not "rise to the level of cruel and unusual punishment when no specific deprivation of a single human need exists." *Wilson*, 501 U.S. at 305. "*Some* conditions of confinement may establish an Eighth Amendment violation 'in combination' when each would not do so alone, but only when they have a mutually enforcing effect that produces the deprivation of a single, identifiable human need such as food, warmth, or exercise—for example, a low cell temperature at night combined with a failure to issue blankets." *Id.* at 304. Thus, the Court must determine whether Plaintiff has alleged that the conditions of his confinement have a mutually enforcing effect that deprives him of an identifiable human need. *Id.* According to Plaintiff, he has sufficiently alleged the deprivation of the basic human needs of (1) sleep, and (2) exercise and educational programming. [Doc. 28 at 5].[7] Plaintiff

---

[7] Plaintiff also argues that his Complaint "alleges unconstitutional deprivations of . . . outside communication and mail, . . . medical care, . . . [and] his right to petition the Courts." [Doc. 28 at 5]. However, Plaintiff makes clear in his Complaint that Claim One is based on the denial of "access to exercise and educational opportunities and . . . causing Plaintiff to suffer sleep deprivation," [Doc. 1 at 25 (capital letters omitted)], and Plaintiff already brings separate claims for the alleged denial of his First and Eighth Amendment rights due to the alleged interference with his mail, the denial of medical treatment, and interference with his right to access the courts. *See* [*id.* at 28, 30, 24]. Furthermore, Plaintiff cites no legal authority that access to mail or the courts is a "basic human need" contemplated in Eighth Amendment jurisprudence. *See generally* [Doc. 28]. Accordingly, the Court only addresses the two specific bases for liability identified in Plaintiff's Claim One.

does not direct the Court to any specific allegations supporting his contentions or cite to any case law in support of his arguments. *See* [*id.*]. The Court addresses each basic human need in turn.

***Sleep***. The government "must provide within [a prison] reasonably adequate ventilation, sanitation, bedding, hygienic materials, and utilities (i.e., hot and cold water, light, heat, plumbing)." *Ramos v. Lamm*, 639 F.2d 559, 568 (10th Cir. 1980). "In short, [the government] must provide an inmate with shelter which does not cause his degeneration or threaten his mental and physical well being." *Id.* "[S]leep is critical to human existence, and conditions that prevent sleep have been held to violate the Eighth Amendment." *Walker v. Schult*, 717 F.3d 119, 126 (2d Cir. 2013) (collecting cases).

Defendants argue that an inference of unconstitutional conditions cannot be drawn from the operation of the prison's HVAC system because "[t]he fact that the temperature occasionally may not comport with [Plaintiff's] personal comfort does not plausibly show a deprivation of the minimal civilized measure of life's necessities." [Doc. 24 at 5]. In support, Defendants note that the Constitution "does not mandate comfortable prisons." [*Id.* (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981))].

However, the Court respectfully disagrees that Plaintiff's complaint is simply that the temperature in his cell is uncomfortable; rather, his chief complaint is that the flow of "extreme hot air" wakes him up "repeatedly" four to five times per night, every night, and is causing Plaintiff to suffer from extreme sleep deprivation. [Doc. 1 at ¶¶ 75–76]. He describes this as "both physical and mental torture" and alleges that this sleep deprivation may be causing his high blood pressure, depression, and memory loss. [*Id.*].[8]

---

[8] Defendants state that Plaintiff "does not claim that any medical provider has found a correlation between these complaints [about his health] and the 'hot air' in the HVAC system," and contend that Plaintiff's allegations on "information and belief" are "not entitled to the presumption of truth"

"Conditions [of confinement] which result in chronic, long term sleep deprivation may support a claim under the Eighth Amendment." *Matthews v. Holland*, No. 1:14-cv-01959-SKO-PC, 2017 WL 1093847, at *3 (E.D. Cal. Mar. 23, 2017); *see also Custard v. Turner*, No. 06-cv-01036-WYD-CBS, 2007 WL 2872436, at *5 (D. Colo. Sept. 26, 2007) (recognizing that "near-constant deprivation of sleep may constitute an unconstitutional condition of confinement") (citing *Keenan v. Hall*, 83 F.3d 1083, 1090–91 (9th Cir. 1996)).   Courts have concluded that where an inmate alleges that his or her sleep is routinely disrupted *every night* for an indefinite period of time, this may be sufficient to state an Eighth Amendment claim.  *See, e.g.*, *Antonelli v. Sheahan*, 81 F.3d 1422, 1433 (7th Cir. 1996) (concluding that the plaintiff sufficiently stated an Eighth Amendment claim by alleging that a noise "occurred every night, often all night, interrupting or preventing his sleep"); *Matthews*, 2017 WL 1093847, at *3 (allegations that loud beeps occurring in 5, 10, 15, and 20 minute intervals that resulted in the inmate's inability to sleep were "sufficiently extreme to meet the objective element of a conditions of confinement claim"); *Evans v. McDaniels*, No. 3:09-cv-0319-LRH-VPC, 2010 WL 2953986, at *3 (D. Nev. July 23, 2010) (allegations that defendants "subjected [the plaintiff] to sleep deprivation through constant noise from speakers and from banging on pipes" stated a colorable Eighth Amendment claim); *Guitron v. Noonan*, No. 18-cv-1072, 2020 WL 4904073, at *6 (E.D. Wis. Aug. 20, 2020) (allegations that "noise disrupted [the pretrial detainee's] sleep every night for months on end" were sufficient to state Fourteenth Amendment claim).

---

because they are within his knowledge.  [Doc. 24 at 5 n.6].  The Court respectfully disagrees. Plaintiff does not allege that his health conditions may be caused by the "hot air" specifically, but by his chronic lack of sleep.  [Doc. 1 at ¶ 76].  Moreover, the Court cannot conclude that the cause of Plaintiff's health conditions is necessarily within Plaintiff's knowledge, as it is unclear whether Plaintiff has any medical training so as to personally know the cause of his conditions.  In these circumstances, the Court does not find the incarcerated Plaintiff's pre-discovery allegations on "information and belief" improper.

Although Plaintiff's allegations are not overwhelmingly detailed, the Court concludes that they are sufficiently detailed to state a plausible Eighth Amendment claim, given his allegations that his sleep is "repeatedly" interrupted "throughout the night, every night," resulting in health problems. Though the Court notes Defendants' reliance on *Strope v. Sebelius*, 189 F. App'x 763 (10th Cir. 2006), this unpublished case does not dictate a different result here. In *Strope*, the plaintiff asserted a conditions-of-confinement claim based on the removal of fans from cell houses. *Strope*, 189 F. App'x at 766. The Tenth Circuit noted that, although the plaintiff had alleged that fans were necessary to control the "excessively hot" temperature in his cell and "the high temperatures ma[d]e it hard to sleep," these conditions, though "uncomfortable," were insufficient to state an Eighth Amendment claim. *Id.* But here, Plaintiff does not simply allege that it is "hard" for him to sleep, but that he is suffering from extreme sleep deprivation resulting in health issues. *E.g.*, [Doc. 1 at ¶¶ 75–76]. Moreover, in *Strope*, the Tenth Circuit supported its holding by noting that

> based on the exhibits attached to the complaint, it appears that fans are available for purchase in the prison canteen, and that the prison has a policy of providing fans to indigent prisoners. Mr. Strope does not contest these facts and does not claim that he lacks sufficient funds to purchase a fan.

*Strope*, 189 F. App'x at 766 n.3. There are no similar circumstances present here.

To the extent Defendants believe that the challenged conditions of confinement are insufficient to arise to a constitutional violation, they may obtain, through discovery, additional information as to the exact conditions of Plaintiff's cell, how much the HVAC system interferes with his sleep, and what impact the lack of sleep may have on Plaintiff's health. But at this stage in the litigation, Plaintiff's allegations are sufficient to survive Defendants' Motion to Dismiss.

**Exercise**. In addition, Plaintiff alleges that the ADMAX handbook provides "every inmate . . . the right to 'a regular exercise period,'" but Plaintiff is allowed only "up to three hours a week

17

of outdoor exercise" and "some weeks . . . is not permitted even a single hour of exercise."  [Doc.

1 at ¶¶ 31–32].  Plaintiff does not have access to any indoor exercise area, and thus, "his outside

time marks the only opportunity for him to exercise."  [*Id.* at ¶ 34].  He states that "[m]ost weeks

he does not get any exercise time at all."  [*Id.* at ¶ 35].  Plaintiff states that "upon information and

belief," his lack of access to exercise or the outdoors has caused him "anxiety, depression,

insomnia, memory loss, and paranoia," as well as high blood pressure.  [*Id.* at ¶ 39].

The Tenth Circuit has recognized that "some form of regular outdoor exercise is extremely

important to the psychological and physical well being of inmates, and some courts have held a

denial of fresh air and exercise to be cruel and unusual punishment under certain circumstances."

*Fogle v. Pierson*, 435 F.3d 1252, 1260 (10th Cir. 2006) (quotation omitted).  But there is no bright

line rule for when the denial of outdoor exercise amounts to cruel and unusual punishment,

*Ramirez v. Cooke*, No. 14-cv-00171-RBJ-CBS, 2014 WL 7403288, at *4 (D. Colo. Dec. 29, 2014),

and "no court has held that denial of fresh air and exercise is a per se Eighth Amendment

violation."  *Anderson v. Colo. Dep't of Corr.*, 848 F. Supp. 2d 1291, 1296 (D. Colo. 2012).  Instead,

whether such a deprivation amounts to an Eighth Amendment violation "depends on the facts of

the particular case."  *Id.*

It is not entirely clear, based on Plaintiff's allegations, just how much outdoor exercise

time he is permitted.   For example, it is unclear whether, in those weeks where Plaintiff is "not

permitted" an hour of exercise, Plaintiff is outright denied *any* time to exercise outdoors, or

whether he is permitted time to exercise, but not more than one hour.  And while Plaintiff does

allege that "[m]ost weeks," he gets no exercise time at all, [*id.* at ¶ 35], this statement does not

clearly inform the Court how often Plaintiff is permitted no time to exercise outside.

Because the Court's inquiry turns on the facts of the particular case, *Anderson*, 848 F. Supp. 2d at 1296, and because the Complaint lacks sufficient factual details to permit the Court to ascertain how much outdoor exercise time Plaintiff is or is not permitted, Plaintiff has not alleged sufficient facts to state an Eighth Amendment claim based on the deprivation of outdoor exercise time. To be sure, allegations establishing the outright denial of exercise for an extended period of time are often sufficient to state an Eighth Amendment claim. *See, e.g.*, *Perkins v. Kan. Dep't of Corrs.*, 165 F.3d 803, 810 (10th Cir. 1999) (outright denial of outdoor exercise for nine months was sufficient to allege Eighth Amendment violation); *Fogle v. Pierson*, 435 F.3d 1252, 1260 (10th Cir. 2006) ("[A] factfinder might conclude that the risk of harm from three years of deprivation of any form of outdoor exercise was obvious and that DOC officials disregarded that risk by keeping [the plaintiff] in administrative segregation."); *Parker v. Zavaras*, No. 08-cv-00737-MSK-KLM, 2011 WL 1211487, at *13 (D. Colo. Mar. 31, 2011) (denying summary judgment on Eighth Amendment claim because a factfinder could determine that denial of exercise for two years and five months was sufficiently serious so as to amount to Eighth Amendment violation); *but see Ajaj v. United States*, 293 F. App'x 575, 584 (10th Cir. 2008) (in the summary-judgment context, determining that the deprivation of outdoor recreation for one year "is not sufficiently serious to implicate the Eighth Amendment"). But Plaintiff does not allege that he is completely denied exercise time, alleging instead that he is sometimes permitted "up to three hours" of exercise time per week. [Doc. 1 at ¶ 32]. In similar circumstances, courts have found allegations insufficient to state a claim under the Eighth Amendment. *See, e.g.*, *Khan v. Barela*, 808 F. App'x 602, 610 (10th Cir. 2020) (concluding that the plaintiff's "allegation that during a three-year-plus period he was allowed outdoors to exercise only three times per week and for a maximum of 2.5 hours per week fails to show an objectively substantial risk of serious harm"); *Rosales v. Ortiz*, No. 06-cv-02438-

EWN-CBS, 2008 WL 877173, at *11 (D. Colo. Mar. 27, 2008), *aff'd*, 325 F. App'x 695 (10th Cir.

2009) (concluding that allegations that the plaintiff had "access to the gym once per week for 50

minutes and [access to] outdoor exercise for 45 minutes every two weeks" did not "rise to the

serious level implicating a violation of [the plaintiff's] Eighth Amendment rights"); *cf. Brooks v.*

*Colo. Dep't of Corrs.*, No. 13-cv-02894-CBS, 2014 WL 5315000, at *8 (D. Colo. Oct. 17, 2014)

(granting motion to dismiss conditions-of-confinement claim where the plaintiff "[did] not allege

that he was wholly prevented from exercising" and "it [was] clear from [the plaintiff's] allegations

that he regularly participates in some exercise")].   Accordingly, the Court concludes that the

present allegations are insufficient to state an Eighth Amendment claim based on a lack of outdoor

exercise time.

    ***Educational   Programming***.    Finally,   Plaintiff   asserts   that   he   is   denied   access   to

educational opportunities because those opportunities are available only in the English language,

which he does not speak, and there are no Spanish translations made available to Plaintiff, [Doc.

1 at ¶¶ 46–54], and argues that the denial of educational programming amounts to a deprivation of

a basic human need.   [Doc. 28 at 5].   Defendants argue that the lack of access to educational

programs does not give rise to an Eighth Amendment violation.   [Doc. 24 at 4–5].

    The Court agrees with Defendants.   Courts have concluded that similar allegations are not

sufficiently serious to state an Eighth Amendment claim.  *See Trujillo v. Williams*, 465 F.3d 1210,

1225 n.17 (10th Cir. 2006) ("[L]imited access to education, employment, religious programming,

housing assignment, recreation time and equipment, the telephone, and the commissary . . . do not

demonstrate a deprivation of the minimal measure of life's necessities") (quotation omitted); *Smith*

*v. Romer*, 107 F.3d 21 (Table), 1997 WL 57093, at *2 (10th Cir. 1997) (holding that inmate's

complaints concerning, *inter alia*, lack of access to education, recreation, and vocational programs

"do not relate to life's necessities" and fail to satisfy the objective prong of the test); *Martin v. Milner*, No. 07-cv-02689-REB-KLM, 2008 WL 4748519, at \*5 (D. Colo. Oct. 28, 2008) ("[E]ducation is not one of the core areas generally recognized to be protected by the Eighth Amendment."). Plaintiff cites no legal authority establishing that the deprivation of educational opportunities amounts to a deprivation of the minimal measure of life's necessities. *See generally* [Doc. 28]. Therefore, Plaintiff cannot state an Eighth Amendment claim based on the denial of access to educational programs.

In sum, the Motion to Dismiss is **GRANTED in part** and **DENIED in part** with respect to Claim One. It is **GRANTED** insofar as Plaintiff alleges a conditions-of-confinement claim based on his lack of access to outdoor exercise or educational programming; it is **DENIED** to the extent the claim is based on the conditions allegedly causing Plaintiff's sleep deprivation.

### B.   Medical Deliberate Indifference

"A prison official's deliberate indifference to an inmate's serious medical needs is a violation of the Eighth Amendment's prohibition against cruel and unusual punishment." *Mata v. Saiz*, 427 F.3d 745, 751 (10th Cir. 2005). Like a conditions-of-confinement claim, to establish a constitutional liability based on medical deliberate indifference, a plaintiff must make both an objective and a subjective showing. *Sealock v. Colorado*, 218 F.3d 1205, 1209 (10th Cir. 2000). The objective component requires the plaintiff to allege objective facts establishing that demonstrate that the constitutional deprivation was "sufficiently serious." *Mata*, 427 F.3d at 751 (citing *Farmer*, 511 U.S. at 834). The subjective component requires the plaintiff to sufficiently allege the defendant's culpable state of mind, i.e., that the defendant knew of and disregarded a substantial risk of harm to the plaintiff. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Oxendine v. Kaplan*, 241 F.3d 1272, 1276 (10th Cir. 2001). "Under this standard, 'the official must both be

aware of the facts from which the inference could be drawn that a substantial risk of serious harm

exists, and he must also draw the inference.'" *Brooks v. Colo. Dep't of Corrs.*, 12 F.4th 1160,

1173 (10th Cir. 2021) (quoting *Farmer*, 511 U.S. at 837).

Claim Three asserts a violation of Plaintiff's Eighth Amendment right to receive medical

care. *See* [Doc. 1 at 30].  Plaintiff alleges that Defendants violated his Eighth Amendment right

to receive adequate medical care while incarcerated by (1) denying Plaintiff proper medical care

for his nail fungus and (2) denying him proper mental health care.  [*Id.* at ¶ 136].

### 1.    Plaintiff's Nail Fungus

With respect to the nail fungus, Defendants first assert that this condition is not sufficiently

"serious" to meet the objective prong.  [Doc. 24 at 13 (collecting cases)].  Defendants note that

while Plaintiff alleges that his fungus might develop into an infection, he does not allege in his

Complaint that he currently has an infection, and any speculation that he may contract a future

infection does not satisfy the objective prong.  [*Id.* at 12–13].  In addition, they argue that Plaintiff

fails to allege that any specific individual was subjectively aware of facts from which an inference

could be drawn that a serious risk of harm to Plaintiff exists, or that any person in fact drew that

inference.  [*Id.* at 14].  In response, Mr. Guzman Loera posits that "[t]he Government reduces

plaintiff's medical . . . claims to complaints about ordinary toenail fungus . . ., but the Government

has not offered any evidence to support its claims."  [Doc. 28 at 7–8].  Furthermore, he states that

"although the Government faults plaintiff for not offering evidence . . . that he has an actual toe

infection, it misses the point that the absence of any such diagnosis is due to the defendant's [sic]

own negligence."  [*Id.* at 8].

Respectfully, Plaintiff misstates the standard for pleading his claims and surviving a Rule

12(b)(6) motion.  The limited inquiry before the Court is whether the Complaint contains sufficient

factual allegations to plausibly state an Eighth Amendment violation. *Utah Gospel Mission v. Salt Lake City Corp.*, 425 F.3d 1249, 1253-54 (10th Cir. 2005). Defendants are not required to offer evidence at this stage in the case, nor would it be proper for them to do so. Nor does the Court read the Motion to Dismiss as "fault[ing] plaintiff for not offering evidence." *See* [Doc. 28 at 8]. Rather, Defendants have identified specific deficiencies in Plaintiff's allegations, to which Plaintiff has not offered a substantive response. *See* [Doc. 24 at 12–14]. With this in mind, the Court turns to the Parties' arguments.

*Objective Prong*. The Court agrees with Defendants that Mr. Guzman Loera has not alleged an objectively serious medical need so as to sufficiently state a claim under the Eighth Amendment. Plaintiff alleges that he developed a fungus in his "right toenail" from using ADMAX's nail clippers. [Doc. 1 at ¶ 72]. He alleges that he "has not been given any type of medication to treat the nail fungus, and there is no nail fungus treatment readily available for purchase on the commissary list." [*Id.* at ¶ 74]. Plaintiff alleges that he "continues to be in medical need to treat his nail fungus." [*Id.* at ¶ 138].

A medical need is "sufficiently serious" if it "is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Sealock*, 218 F.3d at 1209. Plaintiff does not allege that his nail fungus was diagnosed as requiring treatment by an ADMAX medical professional, nor does he provide any detail as to the nature of the nail fungus, so as to permit the Court to determine whether the need for treatment is so obvious that even a lay person would recognize the need for treatment. *See generally* [Doc. 1]; *compare Romero v. Folino*, No. 13V0691, 2014 WL 710025, at *9 (W.D. Pa. Feb. 25, 2014) (concluding that a fungal infection in the nail was sufficiently serious to state Eighth Amendment claim where the plaintiff alleged that he had "experienced

degeneration of his toenail, . . . that his toes ha[d] become inflamed and that his toenails ha[d] thickened and overgrown, which has caused bleeding and extreme sensitivity," and that the infection "cause[d] him physical pain.").  Absent supporting factual allegations establishing the seriousness of this medical need, the Court cannot conclude that the mere existence of a toenail fungus is sufficient to meet the objective prong on his Eighth Amendment claim.  *See Aragon v. Baroni*, No. 13-cv-02772-RBJ-BNB, 2014 WL 3562998, at *9 (D. Colo. July 18, 2014) (concluding that the plaintiff's fungal infection in three fingernails "[did] not meet the Eighth Amendment objective component"); *Armendariz v. GEO Grp., Inc.*, No. CV 09-594 WPL/LAM, 2010 WL 11622783, at *11 (D.N.M. June 17, 2010) (observing that the plaintiff's complaints of a nail fungus "are not comparable in severity to the types of conditions that the Tenth Circuit has found to be sufficiently serious.").[9]

**Subjective Prong**.  The Court reaches the same conclusion with respect to the subjective component.  Plaintiff does not affirmatively allege that he requested medical treatment for his nails, but does reference his "requests for medical treatment for the nail fungus." [Doc. 1 at ¶ 138]; *see also* [*id.* at ¶ 140 ("Defendants, and each of them, by ignoring Plaintiff's requests for the medical treatment described herein above, have subjected Plaintiff to conditions of confinement that create a substantial risk of getting a skin infection or cellulitis, which could be life

---

[9] Furthermore, to the extent that Plaintiff suggests that a lack of medical treatment may cause his nail fungus to develop into an infection, [Doc. 1 at ¶ 140], the Court notes that "[a] delay in medical treatment constitutes an Eighth Amendment violation where the plaintiff can show that the delay resulted in substantial harm." *Vigil v. Laurence*, 524 F. Supp. 3d 1120, 1128 (D. Colo. 2021). This substantial harm requirement may be met by a showing of a "lifelong handicap, permanent loss, or considerable pain." *McCowan v. Morales*, 945 F.3d 1276, 1291 (10th Cir. 2019) (internal quotation marks omitted). However, Plaintiff does not press this theory in his Response, nor does the Complaint contain any allegations suggesting that an infection would lead to a lifelong handicap, permanent loss, or considerable pain. *See generally* [Doc. 1]. Accordingly, the Court cannot conclude that Plaintiff states a claim on this basis.

threatening.")].  "Such allegations are conclusory and not therefore entitled to the presumption of truth." *Roemer v. Carochi*, No. 14-cv-01655-PAB-NYW, 2015 WL 5728769, at *9 (D. Colo. Sept. 29, 2015).  But even if these allegations were sufficient to allege that Plaintiff did indeed request medical treatment for his fungus from ADMAX officials, Plaintiff fails to identify which Defendant (if any) he made the request and does not otherwise raise *any* allegations about *any* specific Defendant, so as to establish that any of the Defendants had the requisite subjective knowledge of his medical need. *See generally* [Doc. 1].  "[T]he collective nature of [Plaintiff's] allegations and lack of corresponding factual support is insufficient to establish that each individual defendant acted (or failed to act) with the requisite state of mind." *Roemer*, 2015 WL 5728769, at *9.  The Court concludes that Plaintiff fails to sufficiently allege either required component of an Eighth Amendment deliberate indifference claim with respect to his nail fungus.

## 2.    Plaintiff's Mental Health

Next, Defendants contend that Plaintiff fails to state an Eighth Amendment claim insofar as the claim is based on the alleged failure of BOP officials to provide Plaintiff with adequate mental health treatment.  [Doc. 24 at 14–15].  Defendants note that the Amended Complaint does not allege that Mr. Guzman Loera has been diagnosed with clinical depression, [*id.* at 15], and frame Plaintiff's complaints about the frequency of his visits from a mental health professional as a mere disagreement in the course of treatment.  [*Id.* at 14–15].  And with respect to the subjective prong, they contend that Plaintiff's allegations do not "plausibly show that any specific official disregarded a known, substantial risk of harm with criminally reckless intent," but instead "demonstrate that [Plaintiff] receives a consistent, measured course of treatment."  [*Id.*].  Mr. Guzman Loera raises the same arguments in response here as he did with respect to his nail fungus. [Doc. 28 at 7–8].

*Objective Prong*.  In his Complaint, Plaintiff alleges that he is experiencing depression and anxiety.  [Doc. 1 at ¶¶ 39, 104].  He asserts that "he has no one to help him cope with the effects and trauma of solitary confinement."  [*Id.* at ¶ 77].  He states that a Spanish-speaking "individual from the mental health department" stops by his cell "every four to five weeks," but that typically, ADMAX has someone from the mental health department do weekly rounds.  [*Id.* at ¶ 105].  Because the individual speaks only English, Plaintiff cannot meet with that individual.  [*Id.*].  He alleges that "BOP staff at ADMAX ha[ve] ignored all of Plaintiff's requests for regular visits by a psychiatrist or other mental health professional."  [*Id.* at ¶¶ 78, 106].

Some courts have concluded that depression and anxiety or other mental health conditions can amount to a sufficiently serious medical need for purposes of the Eighth Amendment.  *Encinias v. N.M. Corrs. Dep't*, No. 21-c-1145 KG/SCY, 2023 WL 2330367, at *8 (D.N.M. Mar. 2, 2023); *Gonzales v. LNU*, No. CV 14-484 WJ/KK, 2015 WL 13651116, at *7 (D.N.M. Sept. 8, 2015), *report and recommendation adopted*, 2015 WL 13651117 (D.N.M. Sept. 28, 2015); *Tillmon v. Cnty. of Douglas*, No. 18-cv-00492-RBJ-KLM, 2019 WL 1375678, at *8 (D. Colo. Mar. 27, 2019), *aff'd*, 817 F. App'x 586 (10th Cir. 2020); *but see Templeton v. Anderson*, No. 12-cv-01276-RBJ-BNB, 2014 WL 3638849, at *6 (D. Colo. July 23, 2014), *aff'd*, 607 F. App'x 784 (10th Cir. 2015) ("Mr. Templeton's fear and anxiety are not sufficiently serious mental health issues for a delay in care to rise to the level of an Eighth Amendment violation.").  Here, however, Plaintiff does not allege that he has been formally diagnosed with anxiety or depression and provides no supporting factual allegations detailing the extent to which his mental health struggles affect his daily life. *See generally* [Doc. 1]; *see also Riddle v. Mondragon*, 83 F.3d 1197, 1204 (10th Cir. 1996) (concluding that allegations were insufficient where the plaintiffs alleged that they had a mental disorder, but there were "no averments of diagnosis by a physician of a medal need mandating

treatment, nor of a condition which a lay person would easily recognize as necessitating a doctor's attention"); *compare Tillmon*, 2019 WL 1375678, at *8 (concluding that the plaintiff's mental health condition was a sufficiently serious medical need where the plaintiff was diagnosed and prescribed medication and had alleged that "his mental health issues ha[d] caused a significant disruption in his everyday life"). Stated differently, Mr. Guzman Loera has not raised allegations demonstrating that his mental health conditions are "so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Sealock*, 218 F.3d at 1209.

*Subjective Prong*. Even assuming that Plaintiff has met the requirements of the objective components, the Court nevertheless would conclude that Plaintiff fails to state an Eighth Amendment claim. In his Complaint, Plaintiff alleges that "BOP staff at ADMAX have ignored all of Plaintiff's requests for regular visits by a psychiatrist or other mental health professional." [Doc. 1 at ¶ 78]. But again, Plaintiff does not allege that he made these requests to any of the named individual Defendants or otherwise put forth facts suggesting that these individuals had knowledge of a substantial risk of harm to Plaintiff. *See generally* [*id.*]. This alone renders Plaintiff's claim deficient. *See Roemer*, 2015 WL 5728769, at *9.

For these reasons, the Court concludes that Plaintiff has not sufficiently stated an Eighth Amendment deliberate indifference claim. The Motion to Dismiss is thus **GRANTED** with respect to Claim Three.

### III.    The First Amendment

Claim Four is based on Plaintiff's "First Amendment right to petition the government for redress of grievances," [Doc. 1 at 34 (capital letters omitted)], and appears to allege a denial of Plaintiff's First Amendment right to petition based on Defendants' alleged impediment of Plaintiff's ability to exhaust his administrative remedies. *See* [*id.* at ¶ 148]. The First Amendment

protects "the right of the people . . . to petition the Government for a redress of grievances."  U.S. Const. amend. I.   "[T]he right to petition 'extends to all departments of the Government' and includes the 'right of access to the courts.'"  *Santa Fe All. for Pub. Health & Safety v. City of Santa Fe*, 993 F.3d 802, 819 (10th Cir. 2021) (quoting *Cal. Motor Transp. Co. v. Trucking Unlimited*, 404 U.S. 508, 510 (1972)).

Defendants argue in their Motion to Dismiss that Plaintiff's petition claim should be dismissed because there is no constitutional right to use the prison grievance procedure.  [Doc. 24 at 16].  And even if Plaintiff's claim were framed as an access-to-courts claim, Defendants posit, the claim would still be insufficient under Rule 12(b)(6) because Plaintiff has not alleged that any interference with his grievance process frustrated his ability to file a lawsuit or prevented him from achieving a now-unattainable result in past litigation.  [*Id.* at 17].  Mr. Guzman Loera does not meaningfully respond to this argument and does not substantively defend the sufficiency of Claim Four.  *See generally* [Doc. 28].   At best, he cursorily states that the Complaint "accuses [Defendants of] denying him access to any meaningful grievance mechanism" and that he "has been denied access to ADX's Administrative Remedies Program, which is the main vehicle for challenging the conditions of his confinement."  [*Id.* at 6].

The Court is persuaded by Defendants' arguments.  The Tenth Circuit has repeatedly indicated that there is no constitutional right to use the prison grievance procedure.  *See, e.g.*, *Green v. Corrs. Corp. of Am.*, 401 F. App'x 371, 375 n.4 (10th Cir. 2010); *Soboroff v. Doe*, 569 F. App'x 606, 610 (10th Cir. 2014);[10] *see also Flute v. United States*, No. 17-cv-01688-LTB-GPG,

---

[10] "Unpublished opinions are not precedential, but may be cited for their persuasive value."  10th Cir. R. 32.1(A).   "[I]f an unpublished opinion or order and judgment has persuasive value with respect to a material issue in a case and would assist the court in its disposition, [the Tenth Circuit] allow[s] citation to that decision."  *United States v. Austin*, 426 F.3d 1266, 1274 (10th Cir. 2005).

2017 WL 6550858, at *2 (D. Colo. Oct. 13, 2017) ("[T]here is no constitutional right to a prison grievance procedure.").

Insofar as Plaintiff's claim could be construed as an access-to-courts claim, *see* [Doc. 28 at 5 (Plaintiff asserting the constitutional "right to petition to the Courts")], the Court concludes that he has not stated sufficient facts to permit a factfinder to conclude in his favor on such a claim. As a preliminary matter, Plaintiff asserts no specific allegations as to any named Defendants aside from Defendants True and Holbrooks; thus, he necessarily fails to state a claim against the other named Defendants with respect to Claim Four. *See Pahls v. Thomas*, 718 F.3d 1210, 1225 (10th Cir. 2013) ("It is particularly important that plaintiffs make clear exactly who is alleged to have done what to whom, as distinguished from collective allegations.") (alteration marks omitted). Furthermore, to state a claim for denial of access to courts, a plaintiff must plausibly allege that he has been "frustrated or impeded in his efforts to pursue a nonfrivolous legal claim concerning his conviction or his conditions of confinement." *Gee v. Pacheco*, 627 F.3d 1178, 1191 (10th Cir. 2010) (citing *Lewis v. Casey*, 518 U.S. 343, 351–55 (1996). Plaintiff does not do so; indeed, his "allegations do not connect a deprivation to any injury at all." *Id.*; *see also generally* [Doc. 1]. Stated differently, Plaintiff fails to allege that he was impeded in his ability to bring a nonfrivolous legal claim by any alleged interference by Defendants True or Holbrooks in the grievance process. Accordingly, the Motion to Dismiss is **GRANTED** as to Claim Four based on Plaintiff's failure to state a claim under Rule 12(b)(6).[11]

---

[11] In his Complaint, Mr. Guzman Loera states that he has established a prima facie First Amendment claim on the basis that prison officials "may not retaliate against or harass an inmate because of the inmate's exercise of his right to access the courts," and "[a] plaintiff states a valid First Amendment claim when he has alleged misconduct in relation to the 'filing of specific grievances against defendants' and 'recites facts indicating that the action was substantially motivated as a response to his exercise of constitutionally protected conduct.'" [Doc. 1 at ¶ 150 (quoting *Gee*, 627 F.3d at 1189)]. He alleges that Defendants' "continuing indifference to

**IV.     The Administrative Procedure Act**

Claim Five is asserted under the Administrative Procedure Act ("APA").  [Doc. 1 at ¶¶ 153–57].  The APA provides a "reviewing court" the authority to "hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law[,]" or "contrary to constitutional right, power, privilege, or immunity."  5 U.S.C. § 706(2)(A)–(B).  Mr. Guzman Loera alleges that Defendants' "decision refusing to allow Plaintiff at least 10 hours a week of outdoors exercise is without any reasoned explanation, and is therefore arbitrary, capricious, and unconstitutional."  [Doc. 1 at ¶ 155].  Furthermore, he asserts that "Defendants' decision refusing to mitigate Plaintiff's significant health risks, and deliberately subjecting him to continued paid and suffering, is also arbitrary, capricious[,] and unconstitutional."  [*Id.*].

Defendants argue that Claim Five should be dismissed under Rule 12(b)(6).  Though Defendants assert a number of bases for dismissal, the Court addresses only their first argument, which is dispositive.  Defendants contend that Claim Five should be dismissed because Plaintiff fails to allege any agency action challenged in this lawsuit.  [Doc. 24 at 18–19].[12]  Plaintiff does not respond to this argument.  *See generally* [Doc. 28].

_____

Plaintiff's grievances is at least partly motivated by the fact that he has secured the assistance of counsel in connection with his administrative challenges."  [*Id.* at ¶ 151].  Nowhere else in the Complaint does Plaintiff use the word "retaliate" or "motivated," *see generally* [*id.*], and Plaintiff does not argue in his Response that he states a First Amendment retaliation claim in his Complaint. *See generally* [Doc. 28].

While the Court must construe all well-pleaded allegations in Plaintiff's favor, it need not construct arguments for Plaintiff that he has not raised himself.  *See United States v. Davis*, 622 F. App'x 758, 759 (10th Cir. 2015) ("[I]t is not this court's duty, after all, to make arguments for a litigant that he has not made for himself."); *Mann v. Boatright*, 477 F.3d 1140, 1148 (10th Cir. 2007).  The Court thus does not construe Plaintiff's claim as asserting a First Amendment retaliation claim. *See supra* n.5.

[12] In conjunction with this argument, Defendants posit that "[j]urisdiction is lacking because the APA does not waive sovereign immunity for this claim."  [Doc. 24 at 18].  Based on this Court's

"The APA authorizes judicial review only of final agency actions." *Kobach v. U.S. Election Assistance Comm'n*, 772 F.3d 1183, 1189 (10th Cir. 2014).  To constitute a "[f]inal agency action," two conditions must be met: "First, the action must mark the consummation of the agency's decisionmaking process—it must not be of a merely tentative or interlocutory nature.  And second, the action must be one by which rights or obligations have been determined, or from which 'legal consequences will flow.'" *Bennett v. Spear*, 520 U.S. 154, 177–78 (1997) (quotations and citations omitted).  Because there is a "presumption in favor of judicial review of administrative action," *Block v. Cmty. Nutrition Inst.*, 467 U.S. 340, 348 (1984), courts "construe the concept of final agency action pragmatically, rather than inflexibly." *Kobach*, 772 F.3d at 1189.

The APA defines "agency action" as an "agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act." 5 U.S.C. § 551(13).  "The final term in [§ 551(13)],

---

research, it appears that whether the requirement of a final agency action implicates a waiver of sovereign immunity and is thus jurisdictional is an unsettled question.  For example, the District of Columbia Circuit has "repeatedly held" that where "judicial review is sought under the APA rather than a particular statute prescribing judicial review, the requirement of final agency action is not jurisdictional," *Trudeau v. Fed. Trade Comm'n*, 456 F.3d 178, 186 (D.C. Cir. 2006), and a lack of final agency action does not eliminate a waiver of sovereign immunity. *Id.* at 187.  Thus, courts in that Circuit consider this argument under Rule 12(b)(6). *See Nycal Offshore Dev. Corp. v. Haaland*, No. CV 19-966 (RBW), 2021 WL 6049915, at *6 n.5 (D.D.C. Dec. 21, 2021) (collecting cases).  However, other Circuit courts have decided differently. *See City of New York v. U.S. Dep't of Def.*, 913 F.3d 423, 430 (4th Cir. 2019) ("[S]ubject matter jurisdiction is lacking if the plaintiff fails to challenge a particular 'agency action' that is fit for review."); *Eason Land Co., LLC v. U.S. Dep't of the Interior*, 703 F. App'x 498, 500 (9th Cir. 2017) ("Because [the plaintiffs] do not challenge a failure to take or unreasonably delay a discrete agency action that is legally compelled, the district court did not have subject matter jurisdiction over their [APA] claim.").  The Court could locate no published authority from the Tenth Circuit definitively ruling on this issue, though in one unpublished opinion, the Tenth Circuit stated that a court's "jurisdiction is limited to review of final agency action." *Miami Tribe of Okla. v. United States*, 198 F. App'x 686, 687 (10th Cir. 2006).  The Court concludes that, regardless of whether the issue is analyzed under Rule 12(b)(1) or 12(b)(6), the result is the same: Plaintiff's APA claim must be dismissed.

'failure to act,' is . . . properly understood as a failure to take an agency action—that is, a failure to take one of the agency actions (including their equivalents) earlier defined in § 551(13)." *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 62 (2004). "A 'failure to act' is not the same thing as a 'denial.'" *Id.* "The latter is the agency's act of saying no to a request; the former is simply the omission of an action without formally rejecting a request—for example, the failure to promulgate a rule or take some decision by a statutory deadline." *Id.* "The important point is that a 'failure to act' is properly understood to be limited, as are the other items in § 551(13), to a *discrete* action." *Id.* (emphasis in original). "Thus, a claim under § 706(1) can proceed only where a plaintiff asserts that an agency failed to take a *discrete* agency action that it is *required to take*." *Id.* at 64 (emphasis in original); *see also Fort Sill Apache Tribe v. Nat'l Indian Gaming Comm'n*, 103 F. Supp. 3d 113, 119 (D.D.C. 2015) ("[A] plaintiff seeking to invoke subject matter jurisdiction under the APA must allege that the defendant had a duty to perform a nondiscretionary act."). The plaintiff bears the burden of "identifying specific federal conduct and explaining how it is 'final agency action' within the meaning of section 551(13)." *Colo. Farm Bureau Fed'n v. U.S. Forest Serv.*, 220 F.3d 1171, 1173 (10th Cir. 2000).

Here, Defendants argue that "[b]ecause [Plaintiff] points to no 'rule, order, license, sanction, relief or the equivalent or denial thereof' as the basis for waiver of sovereign immunity, his allegations must fall under the 'failure to act' category[] of § 551(13)." [Doc. 24 at 18]. Plaintiff does not challenge this argument, and the Court agrees with Defendants that Plaintiff's Complaint does not identify any specific rule, order, license, sanction, relief, or equivalent thereof. *See generally* [Doc. 1]; *see also Glenewinkel v. Carvajal*, No. 3:20-cv-2256-B, 2022 WL 179599, at *4 (N.D. Tex. Jan. 20, 2022).

Defendants maintain that Plaintiff's "allegations about outdoor exercise and mental health do not amount to 'a failure to take one of the agency actions (including their equivalents) earlier defined in § 551(13).'" [Doc. 24 at 19 (quoting *Norton*, 542 U.S. at 62)]. The Court respectfully agrees. The Complaint simply does not allege that the BOP failed to take a *discrete action* that it was *required* to take. "[T]he APA does not provide an avenue for 'general judicial review of [an agency's] day-to-day operations.'" *Glenewinkel*, 2022 WL 179599, at *4 (quoting *Lujan*, 497 U.S. at 899) (alterations in original)). And "'[b]road programmatic' types of challenges or challenges to discretionary matters" are insufficient to state a claim under the APA. *Audubon of Kan., Inc. v. U.S. Dep't of Interior*, 568 F. Supp. 3d 1167, 1181 (D. Kan. 2021) (quoting *Norton*, 542 U.S. at 64–65)].

At best, Plaintiff alleges that the ADMAX handbook states that "every inmate has the right to 'a regular exercise period.'" [Doc. 1 at ¶ 46]. But Plaintiff does not allege that the ADMAX handbook sets forth *legal* obligations for BOP staff, and thus, this allegation is insufficient to establish that the BOP is legally required, through some rule, order, or equivalent, to provide Plaintiff a specific amount of exercise time. Furthermore, insofar as Plaintiff challenges Defendants' alleged lack of explanation "as to why Plaintiff is not getting medical treatment for his nail fungus or as to why they decided to not provide Plaintiff with weekly visits from a mental health professional," [Doc. 1 at ¶ 156],[13] "the Eighth Amendment does not [establish] a right to a

---

[13] Plaintiff cites to *Rudkin v. Allred*, No. 12-cv-01471-CBS, 2013 WL 1815174 (D. Colo. Apr. 29, 2013) in his Complaint, representing that *Rudkin* "not[es] that violation of Constitution <u>and APA</u> will arise 'when prison officials prevent an inmate from receiving treatment or deny him access to medical personnel.'" [Doc. 1 at ¶ 156 (quoting *Rudkin*, 2013 WL 1815174, at *4) (emphasis added)]. This is an inaccurate recitation of *Rudkin*, which did not involve any claim raised under the APA and included *no discussion* of the APA whatsoever. *See generally Rudkin*, 2013 WL 1815174. "All parties before a court have a duty to not purposefully misrepresent the rulings they cite." *Lynch v. Nelson*, No. 2:17-cv-00477-DS, 2019 WL 1468142, at *2 (D. Utah Apr. 3, 2019).

particular course of [medical] treatment." *Lemmons v. Houston*, 633 F. App'x 664, 668 (10th Cir. 2015). Thus, the generalized assertion that the BOP is required to provide medical care is insufficient to identify a discrete action that the BOP was required to take. *Norton*, 542 U.S. at 64. "Without identifying any discrete action required by the BOP, the . . . Complaint fails to identify a reviewable agency action under the APA. Therefore, Plaintiff[] fail[s] to identify any 'agency action' on which a waiver of sovereign immunity under the APA can be based." *Glenewinkel*, 2022 WL 179599, at *4 (concluding that an allegation that the BOP failed to provide adequate medical care was insufficient to allege discrete agency action).

For these reasons, the Court agrees that Plaintiff has not stated a claim under the APA. Accordingly, the Motion to Dismiss is **GRANTED** as to Claim Five.

## V.   Leave to Amend

At the end of his Response, Mr. Guzman Loera states that "[i]n the event that this Court were to conclude that certain grounds are non-cognizable or fail to state a claim, plaintiff reserves the right to amend the underlying complaint." [Doc. 28 at 8]. However, the Court notes that the time for Plaintiff to amend as a matter of right has expired, *see* Fed. R. Civ. P. 15(a)(1)(B), and thus, may "amend [his] pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). Plaintiff has not formally requested leave to amend, and while neither Party expressly states whether Defendants would consent to amendment, Defendants do represent that they "do[] not believe the deficiencies in the complaint are correctable by amendment." [Doc. 24 at 1 n.1].

In the absence of a request to amend, a district court may dismiss the action, rather than *sua sponte* grant leave to amend. *See Barnett v. Hall, Estill, Hardwick, Gable, Golden & Nelson, P.C.*, 956 F.3d 1228, 1236 (10th Cir. 2020) ("When a party faces a motion to dismiss and it believes

that it can overcome objections with an amendment to the pleading, *it should seek leave to amend at that time*.  Efficient adjudication of disputes requires that the party present its best effort to state a claim before the court addresses the motion to dismiss") (emphasis added); *Calderon v. Kan. Dep't of Soc. & Rehab. Servs.*, 181 F.3d 1180, 1186 (10th Cir. 1999) ("[A] court need not grant leave to amend when a party fails to file a formal motion.").  Because Mr. Guzman Loera has not formally moved to amend his Complaint and does not otherwise raise any argument explaining why amendment would cure the deficiencies in his Complaint, the Court declines to *sua sponte* grant leave to amend.  To the extent that Plaintiff seeks to amend his operative pleading, he should proceed under the applicable Federal Rules of Civil Procedure and Local Rule of Civil Practice 15.1.

## VI.   Service on the Individual Defendants and the Doe Defendants

Having resolved the Parties' arguments on the Motion to Dismiss, the Court finds it appropriate to address some procedural irregularities precluding the efficient progression of this litigation.

### A.   Service on Defendants Individually

Rule 4(m) provides that "[i]f a defendant is not served within 90 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time." Fed. R. Civ. P. 4(m); *cf.* D.C.COLO.LCivR 41.1 (providing for dismissal with or without prejudice for failure to comply with the Federal Rules of Civil Procedure).  "But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period."  Fed. R. Civ. P. 4(m).  Furthermore, Rule 4(i) states that

> [t]o serve a United States officer or employee sued in an individual capacity for an
> act or omission occurring in connection with duties performed on the United States'

> behalf (whether or not the officer or employee is also sued in an official capacity), a party must serve the United States and also serve the officer or employee under Rule 4(e), (f), or (g).

Fed. R. Civ. P. 4(i)(3).  To date, Plaintiff has not filed any certificate of service reflecting that he has individually identified or served any of the Doe Defendants or that he has personally served the named Defendants in their individual capacities.

Plaintiff filed his Complaint on October 18, 2021, and his deadline to serve all Defendants individually was March 11, 2022.[14]  [Doc. 12].  More than a year has passed since that deadline, and Plaintiff has not yet served Defendants individually, despite receiving an extension of time to do so.[15]  Accordingly, it is **ORDERED** that Plaintiff shall **SHOW CAUSE**, on or before **March 31, 2023**, why his claims against Defendants in their individual capacities—both the named Defendants and the Doe Defendants—should not be dismissed without prejudice for failure to serve under Rule 4(m).[16]

---

[14] On February 2, 2022, the Honorable Michael E. Hegarty issued an Order to Show Cause directing Plaintiff to show cause why he should not recommend dismissal of Plaintiff's Complaint due to failure to serve, noting that Plaintiff's proof of service was deficient—namely, that Plaintiff had not submitted proof that he had provided a copy of the summons and complaint to the United States Attorney's Office for the District of Colorado, as required by Rule 4(i)(1)(A)(i), and he had not filed certified mail return receipts showing that any of the Defendants actually received service via certified mail.  *See* [Doc. 10].  After Plaintiff responded to the Order to Show Cause, *see* [Doc. 11], Judge Hegarty extended Plaintiff's service deadline to March 11, 2022.  [Doc. 12].

[15] Although discovery was stayed in this case, the stay was not entered until August 1, 2022—nearly five months after Plaintiff's service deadline.  [Doc. 30].  Furthermore, a stay of discovery would not preclude Plaintiff from individually serving Defendants.

[16] The Court does not pass on whether any of Plaintiff's claims against the individual Defendants for injunctive relief would be viable under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), or otherwise.  *See Matthews v. Wiley*, 744 F. Supp. 2d 1159, 1167 (D. Colo. 2010) (Injunctive relief "is not within the authority of the Defendants in their individual capacities.  Such relief is only available in an official capacity suit.").

### B.    Doe Defendants

"[P]ursuant to Fed. R. Civ. P. 10, a caption to a complaint must include the names of all parties." *Culp v. Williams*, No. 10-cv-00886-CMA-CBS, 2011 WL 1597686, at *3 (D. Colo. Apr. 27, 2011), *aff'd*, 456 F. App'x 718 (10th Cir. 2012). The "Federal Rules of Civil Procedure do not explicitly allow the naming of fictitious or anonymous parties in a lawsuit," and for this reason, "'an action may be dismissed if the defendant is not sufficiently identified to permit service of process.'" *Id.* (quoting *Stratton v. City of Boston*, 731 F. Supp. 42, 45 (D. Mass. 1989)).

Mr. Guzman Loera has not identified the Doe Defendants and does not provide any allegations in the Complaint sufficient to identify the Doe Defendants. At best, he alleges that he "submitted an Informal Resolution Form to Defendant Holbrooks and/or DOES 6–10, requesting enrollment in education courses" and "Defendant Holbrooks and/or DOES 6–10 responded to Plaintiff's . . . request by stating that Plaintiff had been provided with assignments, which Plaintiff had not turned in." [Doc. 1 at ¶¶ 60–61]. But this Court has already concluded that an Eighth Amendment claim based on the deprivation of educational programs is non-cognizable, and the Court cannot conclude that the Complaint is sufficiently specific to permit service of process on these Doe Defendants. *See Culp*, 2011 WL 1597686, at *3 (dismissing Doe defendants where the allegations against those defendants were "vague and fail to meet the pleading standards under [*Twombly*]"). Plaintiff does not include any allegations about Does 1–5 in his Complaint. *See generally* [Doc. 1].

The Court recognizes that Plaintiff has not had the benefit of discovery in this case, which could disclose the exact identities of the Doe Defendants. "However, the Court should only allow claims against parties whose names are unknown to proceed 'if the complaint makes allegations specific enough to permit the identity of the party to be ascertained after reasonable discovery.'"

*Pearson v. Colo. Dep't of Transp.*, No. 18-cv-02538-KLM, 2019 WL 3550208, at *4 (D. Colo. Aug. 5, 2019) (quoting *Hartley v. Wilfert*, 931 F. Supp. 2d 230, 233 (D.D.C. 2013)).  Such is not the case here, where the Complaint lacks any specific allegations as to the Doe Defendants.  *See Jensen v. Nucor Corp.*, No. 1:21-cv-00100-DAK-JCB, 2021 WL 4748453, at *2–3 (D. Utah Oct. 12, 2021) (dismissing Doe defendants where the plaintiff "failed to provide any allegations relating to the Doe [d]efendants").  Furthermore, this case has been pending for over a year, and discovery was not stayed until ten months after Plaintiff filed the Complaint; yet there is no indication on the docket that Plaintiff had made any efforts (such as moving for early discovery) to ascertain the identities of the Doe Defendants.  *See Patterson v. Santini*, No. 11-cv-01899-RM-KLM, 2018 WL 9945626, at *9 (D. Colo. Jan. 23, 2018), *aff'd*, 749 F. App'x 695 (10th Cir. 2018) ("Given the . . . substantial period of time that has passed since the case was reopened . . . Plaintiff's failure to identify the unidentified defendants is inexcusable.").

Accordingly, Plaintiff is **ORDERED** to **SHOW CAUSE,** on or before **March 31, 2023**, why his claims against the Doe Defendants, in their individual and official capacities, should not be dismissed under Local Rule 41.1 for failure to prosecute and/or failure to comply with the Federal Rules of Civil Procedure.  *See* D.C.COLO.LCivR 41.1 ("A judicial officer may issue an order to show cause why a case should not be dismissed for failure to prosecute or failure to comply with these rules, the Federal Rules of Civil Procedure, or a court order.  If good cause is not shown, a district judge . . . may enter an order of dismissal with or without prejudice.").

## CONCLUSION

For the foregoing reasons, **IT IS ORDERED** that:

(1)     The Motion to Dismiss Pursuant to Rules 12(b)(1) and 12(b)(6) Defendants' Corrected Rule 12(b)(6) [Doc. 24] is **GRANTED in part** and **DENIED in part**;

(2)     Plaintiff's Claims One (to the extent it is based on the deprivation of educational programming or exercise time), Two, Three, Four, and Five, insofar as they are raised against Defendants True, Holbrooks, Garland, and Carvajal in their official capacities, are **DISMISSED without prejudice**;[17]

(3)     On or before **March 31, 2023**, Plaintiff shall **SHOW CAUSE** why (1) the claims against the named Defendants and the Doe Defendants in their individual capacities should not be dismissed without prejudice for failure to serve under Rule 4(m), and (2) why the claims against the Doe Defendants should not be dismissed without prejudice for failure to prosecute.  **Plaintiff is expressly advised that the failure to show good cause may result in this Court dismissing those claims without prejudice without further notice from the Court**; and

(4)     Within **seven days** of the date of this Order, counsel for the appearing Parties shall jointly contact the chambers of Judge Hegarty to set a Scheduling Conference in this matter.

DATED:  March 15, 2023                          BY THE COURT:

                                                _____
                                                Nina Y. Wang
                                                United States District Judge

---

[17] Claims dismissed under Rule 12(b)(1) are properly dismissed without prejudice.  *Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1218 (10th Cir. 2006).  As for the claims dismissed under Rule 12(b)(6), Defendants do not address whether the claims should be dismissed with or without prejudice, but state their position that "do[] not believe the deficiencies in the complaint are correctable by amendment."  *See* [Doc. 24 at 1 n.1].  Because the issue of futility has not been substantively argued before the Court, the Court will dismiss the claims without prejudice.  *See Knight v. Mooring Cap. Fund, LLC*, 749 F.3d 1180, 1190 (10th Cir. 2014) ("[D]ismissal with prejudice is appropriate where a complaint fails to state a claim under Rule 12(b)(6) and granting leave to amend would be futile" (quotation omitted)).